HYNES, Appellant, *v.* SILVER PRINCE MINING CO., Respondent.

(No. 6,471.)

HYNES, Appellant, *v.* PHILIPSBURG MINING CO., Respondent.

(No. 6,472.)

(Submitted October 1, 1929. Decided October 26, 1929.)

[281 Pac. 548.]

*Mr. D. H. Morgan* and *Mr. S. P. Wilson,* for Appellant, submitted a brief; *Mr. Wilson* argued the cause orally.

*Mr. R. E. McHugh* and *Mr. Charles R. Leonard,* for Respondents, submitted a brief; *Mr. Leonard* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

These are appeals from judgments of the district court establishing ownership in defendants of an undivided one-third interest in and to the Scratchall, Sharktown and Blackmail quartz lode mining claims located near Philipsburg, claimed by plaintiff, and decreeing that plaintiff has no right, title or interest in the claims. The causes were tried together

12

in the court below, and we shall dispose of both appeals in one opinion.

In the case of *Hynes* v. *Silver Prince Mining Company* (No. 6471), plaintiff alleges that he is the owner of an undivided one-third interest in the Scratchall quartz lode mining claim. The complaint contains the formal allegations of a suit to quiet title, including the allegation that defendant claims ownership of the one-third interest adverse to plaintiff, and prays for the usual relief. Defendant, by answer, admits that it claims to own the undivided one-third interest and denies the other allegations of the complaint, and alleges that plaintiff's claim is barred by the provisions of sections 9015 and 9016, Revised Codes of 1921, and: "That said plaintiff should not be permitted to have, maintain or prosecute this suit against defendant, for that plaintiff and his predecessors in interest have been guilty of such delay and laches as to preclude him from having, maintaining or prosecuting this action to quiet title. In this connection defendant alleges on information and belief that the foundation of plaintiff's alleged cause of action dates back for a period of more than forty years. That during that time some of the witnesses familiar with the facts have died and the whereabouts of others are unknown and that the facts have faded from the memory of those now living. That the property has greatly fluctuated in value and that it would be inequitable under the conditions for plaintiff to be now permitted to maintain this action." Issue was joined by reply.

The pleadings in the case of *Hynes* v. *Philipsburg Mining Company* (No. 6472) are similar, save that plaintiff claims ownership of an undivided one-third interest in the Sharktown and Blackmail lode claims.

The causes were tried by the court sitting without a jury. Findings of fact and conclusions of law were filed upon which judgments were entered for defendants.

The testimony shows that on May 25, 1878, J. E. Durfee and H. T. Murray were the owners and holders of the three mining claims in controversy. On that date they executed

and delivered to Henry Schnepel a mortgage upon the claims to secure the payment of $5,463. On February 5, 1879, another mortgage upon the claims was given to secure the payment of $1,437. In June, 1879, Schnepel began an action to foreclose these mortgages and thereafter decree of foreclosure was entered. Upon sheriff's sale Schnepel became the purchaser and received sheriff's certificate of sale. On February 23, 1880, and prior to the expiration of the period of redemption, Durfee, Murray and Schnepel entered into an agreement wherein Durfee and Murray waived their right of redemption to all the property and agreed not to sell or transfer the right of redemption or sell or dispose of the property subject to redemption. Schnepel agreed that in consideration of the above covenants, when he received sheriff's deed to the property he would convey by sufficient deed to Durfee and Murray an undivided two-thirds interest in all the property. He further agreed to advance all necessary money to conduct and carry on certain litigation then pending affecting the title to the property. It was mutually agreed: "That all debts against said property or incurred in working and developing the same, including the amount of money paid by Henry Schnepel for which he holds a mortgage against said property on which the sale above mentioned was made, as well as all other moneys he has loaned them or advanced on their accounts and all indebtedness hereafter to be incurred, shall be paid out of the proceeds of the said property, or in other words, the whole property shall be holden for all debts now owing on account of said property or that may hereafter be incurred, and that the said Henry Schnepel shall have full control of the financial affairs relating to said property and the said Murray and Durfee are not to contract any indebtedness on any of the property without the consent of the said Schnepel." Sheriff's deed issued to Schnepel on June 9, 1880. Thereafter, in 1887, United States patents were issued to Schnepel covering the three claims. In 1891 Durfee conveyed an undivided one-third interest in these claims to J. W. Opp, who in 1893 conveyed the same interest in the Shark-

town and Blackmail claims to Thomas H. Hynes, Jr., father of plaintiff. Hynes died and his estate was distributed to his widow and children, who subsequently conveyed to plaintiff. On December 4, 1926, Opp conveyed an undivided one-third interest in the Scratchall claim to plaintiff. Plaintiff claims an interest in the three claims through the several conveyances from Opp.

Schnepel died in 1886, and his widow, Henrietta Schnepel, was appointed executrix of his estate. Under the terms of his will all real estate was devised to his wife and was so disposed of by decree of distribution. In April, 1894, the executrix commenced an action against Durfee and Murray, setting forth the agreement of February 23, 1880, between Schnepel, Durfee and Murray, alleging the amount expended thereunder by Schnepel; that the equity of redemption still existed in the defendants in and to an undivided two-thirds interest in the three claims; and that upon payment into court of the amounts paid out by Schnepel, with interest, Durfee and Murray would be entitled to a deed for that interest. The complaint prayed that the equity of redemption of defendants be forever barred and foreclosed by sale of the property. Defendants were duly served and appeared by demurrer. Murray subsequently answered but failed to appear at the trial of the action. Judgment was regularly entered for plaintiff in accordance with the prayer of her complaint and directed the sale of all the interest of defendants in the property. Sale was had and the interest of defendants purchased by Henrietta Schnepel; sheriff's deed was issued to her in February, 1898. Opp was not made a party to the action. Defendants in these actions claim title through Henrietta Schnepel.

There is some evidence that from the date of the agreement of February 23, 1880, to the date of the sale to Mrs. Schnepel, Durfee and Murray lived upon one of the claims. The testimony conclusively shows that at no time since 1882 or 1883 did either of them do any work of any kind upon any of the claims. Mrs. Schnepel performed some work in the early

'90's, and other parties, under lease from her, worked the claims in a small way at various times until her death in 1908.

Mining activities in the Philipsburg district were at a practical standstill from about 1890 until 1916 or 1917; from that time defendants and their immediate predecessors in interest have been engaged in actual development of the property in controversy. The undisputed testimony shows that they have expended in excess of $250,000, and as a result of their efforts, enterprise and expenditures made by them, the property had, at the time of the trial, reached a point of development where it was being operated at a profit. While it is true, as contended by plaintiff, that large quantities of ore have been extracted and sold, it is also true that the expenditures exceed receipts from the ore sold by more than $100,000.

In case No. 6471 the trial court, among others, made the following finding of fact: "That the plaintiff and his predecessors in interest have been guilty of such delay and laches as to preclude them from having, maintaining or prosecuting this action to quiet title to the said Scratchall quartz lode mining claim. That the foundation of plaintiff's alleged cause of action, to-wit, the contract of February 23, 1880, between Hugh T. Murray and James E. Durfee and Henry Schnepel, introduced in evidence in this action and set out in these findings, goes back to a period of more than forty-seven years, and that during that time some of the witnesses familiar with the facts in relation to the issues have died and the whereabouts of others is unknown, and that the facts in relation to the issues herein have faded from the memory of those now living, and that the property in controversy herein has greatly increased in value; and that it would be inequitable under any conditions, and especially under the conditions existing herein, for plaintiff to be now permitted to maintain this action." The court also found that the claim of ownership of plaintiff is wrongful and without right, and invalid, and casts a cloud upon defendant's ownership and defendant's right and title to the said undivided one-third interest in the claim. The court concluded, as a matter of law, that defendant is the

owner and in possession of the interest claimed by plaintiff, and that defendant is entitled to have its title quieted, and to judgment barring and foreclosing any right, title, estate or interest in, and all liens and encumbrances upon, the Scratchall lode mining claim and every part thereof adverse to defendant's ownership.

Similar findings and conclusions were made and filed in Cause No. 6472, relating to the Blackmail and Sharktown claims.

We think there is an abundance of testimony to support the above findings of fact and conclusions of law. Plaintiff and his predecessors in interest have been guilty of gross laches. His claim of title is based upon the contract of February 23, 1880, between Schnepel, Durfee and Murray, yet during all of the intervening years no claim of ownership or right, legal or otherwise, was made or asserted until the filing of plaintiff's complaint, some time after December 4, 1926. Due to the energy, industry and courage of defendants and their predecessors in interest in the development of the property by the expenditure of large sums of money, it has largely increased in value; it has been converted from a mining claim of questionable value to a profitable, producing and operating mine of great value. Throughout the period of the expensive operations carried on by defendants, plaintiff sat idly by and asserted ownership of an interest in the property only after defendants' efforts had proven successful and the danger of loss was past.

"Laches" has been defined as "such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." (10 Cal. Jur. 520.) Considered as a bar, independent of the statute of limitations, laches means negligence in the assertion of a right; it is the practical application of the equitable maxim "equity aids the vigilant," and it exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted

right inequitable. (*Riley* v. *Blacker*, 51 Mont. 364, 152 Pac. 758.) It has been a recognized doctrine in courts of equity, from the very beginning of their jurisdiction, to withhold relief from those who have delayed for an unreasonable length of time in asserting their claims. The doctrine of laches is based upon grounds of public policy which requires, for the peace of society, the discouragement of stale demands. And where the difficulty of doing entire justice by reason of the death of the principal witnesses, or because, if living, the facts relating to the original transaction have faded from their memory or become obscured by lapse of time, is attributable to gross negligence or deliberate delay, a court of equity will not aid a party whose application is destitute of good faith, conscience and reasonable diligence.

This court in *Kavanaugh* v. *Flavin*, 35 Mont. 133, 88 Pac. 764, 766, speaking through Mr. Justice Holloway, said: "Good faith and reasonable diligence only can call into activity the powers of a court of equity, and, independently of the period fixed by the statute of limitations, stale demands will not be entertained or relief granted to one who has slept upon his rights. Considerations of public policy and the difficulty of doing justice between the parties are sufficient to warrant a court of equity in refusing to institute an investigation where the lapse of time in the assertion of the claim is such as to show inexcusable neglect on the part of the plaintiff, no matter how apparently just his claim may be; and this is particularly so where the relations of the parties have been materially altered in the meantime."

The supreme court of the United States, in the case of *Hammond* v. *Hopkins*, 143 U. S. 224, 36 L. Ed. 134, 12 Sup. Ct. Rep. 418, 427, speaking upon the subject of laches, said: "No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith, and reasonable diligence, but will discourage stale demands, for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has

occurred. The rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible."

The language used in the above case is pertinent here. The principal participants in the transaction of February 23, 1880, are dead; witnesses familiar with the questions in dispute have died and the whereabouts of others is unknown; the facts relating to the transaction, the possession of and work performed upon the property, have become so obscured by time as to render the ascertainment of the exact facts impossible.

The duty of inquiry by plaintiff was all the more peremptory in this case because of the fact that the property of itself was of uncertain character and was liable, as is most mining property, to develop an enormous increase in value. This is actually what took place in this case.

In *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587, 23 L. Ed. 328, the court said: "Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for a thousand dollars at its fair value may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit."

Here plaintiff had ample opportunity to explain his unusual delay, if he could do so, but he did not testify as a witness and offered no explanation whatever, and the presumption must be indulged that he had none.

Plaintiff has slept upon his rights, if any he ever had. His application is destitute of conscience, good faith, and reasonable diligence. It would be highly inequitable to permit him now, after defendants' enterprise and energy and the expenditure of enormous sums of money have developed the

property and greatly increased its value, when the danger, which is over, was at defendants' risk, to assert ownership to an interest in the property and share in the profits.

The conclusion we have reached makes it unnecessary to decide other alleged errors argued by plaintiff.

For the foregoing reasons the judgments are affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.