EMMA ROSYPAL BARRETT, Plaintiff and Appellant, *v.*
FRANK ZENISEK, et al., Defendants and Respondents.
No. 9367.
Submitted May 1, 1957. Decided September 11, 1957.
Rehearing Denied October 17, 1957.
315 Pac. (2d) 1001.

230

Mr. Ralph J. Anderson and Mr. Stanley P. Sorenson, Helena, for appellant.

Mr. H. O. Vralsted, Helena, for respondents.

Mr. Anderson and Mr. Vralsted argued orally.

MR. CHIEF JUSTICE HARRISON:

This action was initiated by Emma Rosypal Barrett to have defendants, Frank Zenisek, Carrie A. Petersen, and Barbie Zenisek, declared constructive trustees of certain land situated in Fergus County, and that the defendants be required to account to plaintiff for the income from said lands, less any amounts paid for taxes thereon.

More than forty-five years ago, in the homestead days of Fergus County, Montana, Vencel Zenisek with his wife, Barbara, resided on a farm near the town of Coffee Creek. Their

children resided with them, with the exception of their married daughter, Mary Rosypal, plaintiff's mother.

Mary Rosypal had made homestead entry on a nearby 160 acre tract of land, the property in dispute, in the year 1909. The plaintiff was born February 13, 1907. Apparently plaintiff's father, Mr. Rosypal, died shortly after Mary filed on the homestead and her mother then married Clarence Moore. In 1912 Mary Rosypal Moore was issued a patent to the land. Apparently Mr. Moore died in the interim and she married one Frank Graves who deserted his family in 1917. The farming of the 160 acre tract was carried on for the most part by the brothers and father of plaintiff's mother.

From six to eight years before her death in December of 1919, plaintiff's mother was very ill, suffering from pulmonary tuberculosis, and because her income was insufficient to care for herself and plaintiff her father provided for them.

On December 17, 1917, Mary Rosypal Graves, or Mary Moore Graves, plaintiff's mother, conveyed the land by general warranty deed to her father, subject to a mortgage of $1,000 as recited therein, and the conveyance in addition covered a house and lot in Coffee Creek. She deeded him the property to get money to pay the expenses of a trip to California for her health and she received the sum of $700. She and her child remained in California about six months, and were destitute when they returned.

As of 1917 plaintiff's witness established the value of the land at $5 to $7 per acre which was approximately the amount of the mortgage. The defendants estimated the value at $3 to $4 per acre. Plaintiff did not establish the value of the house and lot in Coffee Creek, but by inference it was perhaps $700. In 1924 the assessed value of the 160 acres and the town property was $1,655.

On December 19, 1913, Vencel Zenisek made a will, leaving all his property to his wife, Barbara, and made no mention of any of his children. He died January 14, 1919, survived by

his wife and six children, including plaintiff's mother. His will was admitted to probate April 12, 1919, without contest.

When plaintiff's mother died in December, 1919, she left no estate, and her funeral expenses were paid by her relatives. The plaintiff continued to be supported and cared for by her grandmother, aunts and uncles.

In settling the estate of Vencel Zenisek, the attorney for the estate, by means of a warranty deed, obtained releases from all the children in favor of the widow, including the plaintiff, then a minor thirteen years old. Thereafter final account was settled and allowed and distribution made to the widow. The estate was heavily encumbered.

The defendant, Frank Venisek, worked for wages to keep the plaintiff in high school in Lewistown for two years. In 1924 she married at the age of seventeen and continued to live in Lewistown, Montana, until 1926 when she moved to Wisconsin.

The widow, Barbara Zenisek, on June 20, 1921, mortgaged the farm property in question here for $1,000. On July 18, 1922, she conveyed this land and other tracts to her unmarried daughter, Barbie Zenisek.

On May 1, 1929, Barbie Zenisek conveyed an undivided one-third interest in the property to her sister, Carrie Peterson, and by a separate instrument made the same day, conveyed a one-third interest in the property to her brother, Frank Zenisek, retaining one-third for herself.

In 1931 the taxes became delinquent and were not paid, and Fergus County sold the property at tax sale; it was struck off to the county for $63.36. No redemption having been made, plaintiff's husband, on August 26, 1940, purchased the assignment from Fergus County for $209.07, and commenced action for a tax deed; on September 11, 1940, the defendant, Frank Zenisek, redeemed the property. Thereafter on August 22, 1941, the plaintiff filed her complaint herein. The plaintiff was never in possession of the property, paid no taxes thereon, and did not pay off any mortgage thereon.

Plaintiff's second amended complaint is based upon the theory

that the deed from her mother, Mary Moore Graves, to Vencel Zenisek in 1917 was delivered conditionally to him to be held in trust for the plaintiff; that plaintiff's mother never intended to pass beneficial interest in any property except the house and lot in Coffee Creek, and that the money she received for the conveyance ($700) was in consideration of the house and lot in town and was never meant to be consideration for the homestead property. She also alleges that the deed executed by herself during the probate of Vencel's will was without consideration, and was executed upon the fraudulent representations of the defendants that she would eventually get her land back; that ever since, in fact up until the time this suit was filed, the defendants have made representations to her promising to hold the land for her and convey it to her on her request; and that such representations were to induce her to refrain from bringing this action although in fact they had no intention of deeding her the property.

Defendants in their answer and cross-complaint put in issue all of the affirmative allegations of the complaint which tend to set up a constructive trust in the property, and deny the allegations that plaintiff claimed the property as her own, or that the defendants had ever made any fraudulent representations to her. Defendants also set up the affirmative defense of laches and estoppel and in their cross-complaint asked the court to quiet title in themselves, and to declare them legal and equitable owners of the land because they had been in open, notorious, actual, adverse and hostile possession and occupancy of the property under color of title and claim of right for more than ten years last past, and that they and their predecessors in title had paid all taxes on the land.

The reply of the plaintiff was filed in 1944 and put in issue the affirmative defenses in the answer and the possessory claims raised in the cross-complaint of the defendants.

On December 6, 1951, the defendants filed motion for judgment on the pleadings. Trial was finally had and judgment rendered in 1953.

At the trial the plaintiff was asked what her mother had said to her after she deeded the property to Vencel Zenisek, and she replied: "She told me she signed the place over to her father so in case anything happened to her while we were in California he would handle it and take care of it for me so that Frank Graves would not get any." The plaintiff, her sister-in-law, Leota Barrett, and one Anton Tesarek, testified to the effect that certain of the defendants and Barbara, plaintiff's grandmother, had made statements indicating that the land was held for the plaintiff and would be conveyed to her at some future time. Both Barbara and Barbie Zenisek, to whom certain of the representations were attributed, were dead at the time this case came to trial. Frank Zenisek, one of the defendants, had supposedly said that they (the defendants in this action) would settle up with the plaintiff when conditions were a little better. Plaintiff testified that the first time she learned the defendants did not intend to convey the land to her was just prior to the commencement of this action.

No reason for delaying the trial until 1953 was given by the plaintiff.

The defendants in their testimony controverted the above testimony with reference to their holding the land for the benefit of the plaintiff, and also denied plaintiff had made any claim thereto. It was contended at the trial by the defendants that the deed to Vencel Zenisek of the land in 1917 was an absolute sale of the property upon a good and sufficient consideration; that at no time thereafter had plaintiff's mother made any claim to the property or made any objection to including the land in the estate of Vencel Zenisek, although she was alive at the commencement of those proceedings. Frank Zenisek testified plaintiff's mother had told him she sold the property to her father. The evidence showed that defendants had paid all taxes on the property since the death of Vencel Zenisek, and that at no time since then had plaintiff been on or in possession thereof.

At the conclusion of the trial the court made the following

findings of fact: (1) That plaintiff had failed to establish by a preponderance of the evidence the material allegations of her complaint; (2) That defendants had been in adverse possession of the property for more than ten years, and had paid the taxes on the property; (3) That plaintiff was guilty of laches in asserting her claim to the premises; and (4) That defendants' cross-complaint had been sustained by the proof in the action.

Based thereon the court made and entered its conclusions of law, which in effect were that plaintiff's complaint be dismissed; the title to the property be quieted in the defendants; and that defendants have their costs and disbursements in the action. Judgment was thereafter entered in accordance with the findings of fact and conclusions of law.

This appeal was taken from the judgment, assigning as error all the findings of fact and conclusions of law made by the trial court.

We will first review plaintiff's contention that finding of fact No. I was erroneous. In her brief, plaintiff relies primarily on the case of Opp v. Boggs, 121 Mont. 131, 193 Pac. (2d) 379, in asserting that a constructive trust was imposed upon the property in question when it was deeded by plaintiff's mother to Vencel Zenisek in 1917. In that case, a daughter conveyed property to her mother with the understanding that it was to be held for the daughter, which deed was dated November 18, 1924. On February 28, 1928, the mother conveyed the property to the defendant, Catherine Boggs, then Catherine Moore. Plaintiff contended that this conveyance was without consideration and that the parties understood that Catherine Boggs was to hold the property for the daughter, the plaintiff. On December 3, 1942, a deed from Catherine Boggs to William H. Boggs was placed of record. Plaintiff alleged that since the recording of that deed the defendants wrongfully repudiated and denied the plaintiff's ownership and asserted ownership in William H. Boggs. At conclusion of the trial, the court found that a deed from plaintiff to her mother was a gift. This court in remanding the case for a new trial stated the rules applicable

to constructive trusts, indicating that upon the testimony of plaintiff and her mother, a constructive trust would have been permissible, but finding that the trial court had never decided this particular point, namely: Was there a constructive trust created? At page 141 of 121 Mont., at page 385 of 193 Pac. (2d) in its opinion the court stated:

"As above noted, the court did not pass upon conflicting evidence bearing upon the question whether a trust arose, but concluded there was no trust because the several deeds contained no trust provision. It is our conclusion that the cause should be remanded with directions for the court to pass upon the fact situation as to whether a trust arose as contended by plaintiff. If her evidence and that of her mother is believed, then there is sufficient evidence to establish a trust. On the other hand, if defendant Catherine's evidence is believed, then the deed by plaintiff to her mother passed the title * * *."

The trial court, after the case was remanded to it, examined the trial record and the opinion in the Opp case and returned a verdict for the plaintiff. This court reversed that finding in Opp v. Boggs, 124 Mont. 98, 100, 101, 219 Pac. (2d) 647, 648, stating:

"We intended the court to understand that, as a matter of law there was sufficient evidence on plaintiff's behalf, *if believed*, to establish such trust, but since defendant's evidence, *if believed*, showed no trust, *it was up to the trial court to decide which witnesses were entitled to credence and if the trust was in fact established by the evidence.*" Emphasis supplied.

The court then illustrated the conflicting evidence elicited at the trial of the action and ruled these conflicts in the testimony must be rationalized by the trial court, stating:

"In this case the *credibility of the witnesses is of prime importance since the trust issues rest on parol evidence.*

"The trial judge, *who saw and heard the witnesses, can better determine where the truth lies than this court with but the cold record before it.*" Emphasis supplied.

From the above excerpts in the two Opp cases, it is quite evi-

dent that they are distinguishable from this case. In the instant case, in its findings of fact and conclusions of law, the trial court did make a finding on whether a constructive trust was impressed upon the property, for it found that the plaintiff had failed to establish by a preponderance of the evidence, the material allegations of her complaint. As stated before in this opinion, the plaintiff relied for recovery, upon the theory the land was impressed with a constructive trust with herself as the beneficiary. It is evident the trial court understood the theory upon which plaintiff relied, and expressed its finding accordingly, viz.: No constructive trust had been proved by a preponderance of the evidence.

The plaintiff contends, however, that the evidence at the trial greatly preponderates in favor of the plaintiff. At this point let us point out the great divergence between plaintiff's and her witnesses' testimony and that of the defendants'.

Although this court has adopted the rule that it will review all questions of law and fact upon an appeal in an equity case, Hart v. Barron, 122 Mont. 350, 362, 204 Pac. (2d) 797, it is also firmly established that it will not reverse a trial court in such a case on questions of fact unless there is a decided preponderance of the evidence against the findings of the trial court. Bordeaux v. Bordeaux, 32 Mont. 159, 80 Pac. 6; Finlen v. Heinze, 32 Mont. 354, 80 Pac. 918; Pope v. Alexander, 36 Mont. 82, 92 Pac. 203, 565, and see the language cited in Opp v. Boggs, supra.

This court in Watkins v. Watkins, 39 Mont. 367, 370, 102 Pac. 860, 861, illustrated the latter rule with the following language:

"In reviewing the evidence, this court will start out with the presumption that the jury and the trial court did their whole duty and that the findings are supported by the evidence. It will then endeavor, by a fair, unprejudiced, and dispassionate examination of the evidence, to determine whether there is any substantial support for the findings in the evidence, always bearing in mind that it is not assisted by the presence of the

witnesses, and that a witness' manner and demeanor on the stand might justify a conclusion by court or jury not at all warranted by a review of the evidence reduced to cold print. * * *

"The *preponderance must be so clear and decided that this court can say, without resorting to surmise, speculation or conjecture,* that, after making due allowance for the fact that the witnesses were present before the trial court and jury, *the weight of the evidence is so pronounced against the findings that no fair or reasonable view of the evidence could have been adopted by the court or jury upon which to base its findings,* and that this court entertains a definite opinion in that respect." Emphasis supplied.

In the light of the above language it is not apparent to this court that "The preponderance * * * [is] * * * so clear and decided that this court can say, without resorting to surmise, speculation or conjecture" that the trial court erred in its findings.

To further militate against the plaintiff in this action is the ██ rule that in order to recover upon the theory of a resulting or constructive trust, the proof must be clear, satisfactory, convincing and practically free from doubt. Lewis v. Bowman, 113 Mont. 68, 78, 121 Pac. (2d) 162, 167.

In the Lewis case the court used the following language to illustrate this point:

"Where the legal title rests in one person, in order to establish a resulting trust for the benefit of another against the presumption in favor of the legal title, the evidence must be clear and convincing, especially when an attempt is made to establish a resulting trust after the lapse of many years, or where parol evidence alone is relied upon."

This rule has no better application than in the case before us. ██ Here plaintiff is relying mainly upon alleged statements of her mother made more than thirty-five years before the actual trial of the case; these statements were made only to the plaintiff. Further she relies upon testimony concerning statements

reputed to have been made by Barbara Zenisek, her grand-mother, who died before the commencement of this action, and upon representations of Barbie Zenisck Cooper who was dead before the trial. She, however, is confronted with the testimony of live witnesses, the defendants in this action, who refute all of her material testimony, and the material testimony of her witnesses. In this state of the record we cannot say that plaintiff has established a constructive trust by a clear preponderance of the evidence or in a clear and decisive manner.

The trial judge was able to see and perceive the actions, demeanor, and manner of the witnesses as they testified. In a case like the present one, where the evidence is so apparently conflicting as to certain representations made by long dead parties, and representations made by the parties to the action, the duty lies upon the trial court to determine upon whom to rely, in whose favor lies the merits, and to whom to grant judgment. It is not incumbent upon this court to reverse or remand when the trial court, as here, has acted intelligently, conscientiously, and fairly in arriving at its conclusions.

The trial court found in its finding of fact No. III, that plaintiff had been guilty of laches in asserting her claim to the premises. R.C.M. 1947, section 49-119, lays down the rule that, "The law helps the vigilant, before those who sleep on their rights." In a recent decision, Davis v. Steingruber, 131 Mont. 468, 311 Pac. (2d) 784, 785, this court has defined laches in the following manner:

"Laches means negligence in the assertion of a right, and exists where there has been a delay of such duration as to render enforcement of the asserted right inequitable. Riley v. Blacker, 51 Mont. 364, 152 Pac. 758; Montgomery v. Bank of Dillon, 114 Mont. 395, 408, 136 Pac. (2d) 760; Hynes v. Silver Prince Mining Co., 86 Mont. 10, 281 Pac. 548."

The general rules with reference to the doctrine are well expressed in O'Hanlon v. Ruby Gulch Mining Co., 64 Mont. 318, 329, 209 Pac. 1062, 1065, wherein that court said:

"While it is true that the statute of limitations had not run

against the claim now asserted by plaintiffs, that fact alone does not determine their rights. The delay which will bar relief in equity is not necessarily measured by the period prescribed by the statute. It may be much less, depending upon the peculiar circumstances of the case, and in determining whether laches shall bar a particular claim it is proper to consider *whether a party or an important witness has died,* and the party *against whom the claim is asserted has been deprived thereby of important testimony* [Citing case], or *whether the property involved has increased in value* [Citing case], *or whether the property has passed into the hands of an innocent third party* [Citing case], or *whether the position of the parties is so changed otherwise that an injustice will follow a failure to apply the doctrine* [Citing case]. These rules have been enforced repeatedly in this court, and further reference to the authorities need not be made. [Citing cases].'' Emphasis supplied.

Riley v. Blacker, 51 Mont. 364, 152 Pac. 758, 759, is a case which has been cited frequently as illustrating the proper application of the doctrine of laches. In that case plaintiff conveyed by deed to Fannie Blacker. On May 8, 1908, Fannie Blacker died. Jacob Blacker, her husband, was appointed administrator. On December 29, 1909, a decree of distribution vested the property in defendants. From November 9, 1907, Fannie Blacker and defendants collected the rents and maintained the property. On June 30, 1911, plaintiff commenced an action claiming the original deed to Fannie Blacker was intended as a mortgage. In holding the plaintiff was barred under the doctrine of laches, the court said:

''Laches, considered as a bar independent of the statute of limitations, is a concept of equity; it means negligence in the assertion of a right; it is the practical application of the maxim, 'Equity aids only the vigilant', and it exists when there has has been unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable. Therefore has it often been held by this court that: While a

mere delay short of the period of the statute of limitations does not of itself raise the presumption of laches [Citing cases], yet 'good faith and reasonable diligence only can call into activity the powers of a court of equity, and, independently of the period fixed by the statute of limitations, stale demands will not be entertained or relief granted to one who has slept upon his rights. Considerations of public policy and the difficulty of doing justice between the parties are sufficient to warrant a court of equity in refusing to institute an investigation where the lapse of time in the assertion of the claim is such as to show inexcusable neglect on the part of the plaintiff, no matter how apparently just his claim may be; and this is particularly so where the relations of the parties have been materially altered in the meantime'. Kavanaugh v. Flavin, 35 Mont. 133, 88 Pac. 764; * * *."

It has frequently been stated by this court that the doctrine of laches is especially applicable in those cases where there has been a change of circumstances, or where the positions of the parties have been materially altered. This court has gone on to say that the death of one of the parties or a material witness is such a change of position warranting the application of the equitable bar—laches. Kavanaugh v. Flavin, supra, and Riley v. Blacker, supra.

Applying the above rules of law to the instant case, we find them to be applicable in more than one instance. For example, in the present case there has been a long lapse of time, about thirty-six years; the positions of the parties have been materially changed; the defendants paid all taxes on the land, farmed the land for a long time, and have lost the testimony of material witnesses by their death prior to trial. Assuming *arguendo* the claim of the plaintiff is just and equitable, this court would still be warranted in applying the doctrine of laches (Riley v. Blacker, supra), because of the long delay in bringing the action.

This action was commenced in 1941, the pleadings were at issue by 1944, yet the plaintiff did not prosecute this action

until after the defendants asked for judgment on the pleadings in 1951. Between 1944 and 1951 Barbie Zenisek had died, one of the persons who could either have substantiated plaintiff's testimony or refuted it. Assuming plaintiff was not guilty of laches before 1944, this delay in prosecuting her case could be deemed laches by this court. Streicher v. Murray, 36 Mont. 45, 58, 92 Pac. 36, 40. In the Streicher case, Mr. Chief Justice Brantly illustrated the above rule with the following language:

"The mere bringing of an action does not relieve a person from the imputation of laches. The lack of diligence in prosecuting it after it is brought leads to the same consequences as delay in bringing it. Witnesses die or disappear, or the facts fade from memory. The positions of the parties change, or the subject of the controversy fluctuates in value. The right sought to be enforced becomes doubtful or uncertain, or it becomes impossible for the court to administer equity between the parties with any degree of certainty. In all such cases the court will, in its discretion, refuse to entertain the action and leave the parties as they are. [Citing cases]."

This same language was quoted with approval in State ex rel. Rice v. Wilkinson, 82 Mont. 15, 19, 264 Pac. 683.

In the present case plaintiff initiated her suit in 1941; it was finally brought to trial and judgment rendered therein in 1953. Such neglect in prosecuting her action places plaintiff squarely within the rules enunciated by the authorities cited herein. It is incumbent upon the plaintiff to prosecute with diligence.

We have examined the remainder of plaintiff's assignments of error and find them without merit. The judgment is affirmed.

MR. JUSTICES CASTLES, BOTTOMLY and ANGSTMAN, concur.

MR. JUSTICE ADAIR:

I concur in the result but not in all that is said in the foregoing opinion.