MARVEL LOWRANCE, PLAINTIFF AND APPELLANT, *v.* ALICE
GUNDERSON, WIDOW OF MELVIN *A.* GUNDERSON, DECEASED,
ET AL., DEFENDANTS AND RESPONDENTS.

No. 11956.
Submitted April 15, 1971.
Decided July 27, 1971.
487 P.2d 511.

Sandall, Moses & Cavan, Russell K. Fillner (argued), Billings, for plaintiff-appellant.

Hutton, Schiltz & Sheehy, John M. Schiltz (argued), Billings, for defendants-respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is a quiet title action commenced by plaintiff in the district court of Fallon County in January of 1969. Plaintiff sought to quiet title to an overriding oil and gas royalty interest in and to certain real estate situated in the county of Fallon.

Interrogatories were served on behalf of defendant and answer duly made by the plaintiff. The interrogatories requested plaintiff to describe and produce any documents upon which plaintiff asserted her claim. Plaintiff responded, producing eight documents, the import of which can be summarized as follows:

1. Under date of May 7, 1928, Melvin A. Gunderson entered into a unilateral agreement with John Wight which recited the application for a prospecting permit; appointed Wight agent to sell or lease the lands covered thereby and conveyed to Wight three-fourths of Gunderson's interest in the oil and gas and permit. This document was recorded in Fallon County on March 24, 1930, but was not filed in the United States Land Office until 1957.

2. An operating agreement between Melvin A. Gunderson, by John Wight, his attorney in fact, and Capital Gas Corporation for operating prospecting permit under Serial No. Billings 029750, dated July 2, 1928, providing for the payment of 7½% and 2½% overriding royalty to Gunderson.

3. Document 3 is a ratification of document 2 executed by Gunderson. Neither document 2 or 3 was ever filed or recorded.

4. Assignment by Melvin A. Gunderson to John Wight of 75% of 7½% and 2½% overriding royalty reserved in document 2. This instrument was never filed or recorded. It bears date August 11, 1928.

5. Under date of September 24, 1932, Gunderson assigned the permit to Wight "subject, however, to a reservation to me of seven and one half per cent royalty on the preferred acreage". This instrument was filed with the Bureau of Land Management April 21, 1933, and approved by the Secretary of the Interior on October 13, 1934.

6. On October 6, 1934, Wight assigned the prospecting permit to W. B. Haney "subject to the regular royalty to the United States, and 7½% royalty on preferred acreage, and 2½% royalty on nonpreferred acreage, to the original permittee * * *", that is to say, Gunderson. This instrument was filed in the land office on January 2, 1935.

7. Under date of March 27, 1934, Gunderson assigned to Wight all his interest in the prospecting permit. The assignment was filed in the United States Land Office.

8. Assignment by John Wight to Marvel Lowrance of 1⅞% overriding royalty (¾ of 2½%) accruing from lease Serial No. Billings 029750(B) issued to W. B. Haney. This instrument was dated April 5, 1957 and filed in the United States Land Office April 22, 1957.

Thereafter defendant moved for summary judgment based upon the documents relied upon by plaintiff and some twenty other documents, on the basis that the documents themselves established no vesting of right in plaintiff; that the action was barred by laches and the statute of limitations indicates adverse possession and/or abandonment by the plaintiff's predecessor in interest of any claim he could possibly have had.

The motion for summary judgment was granted, and this appeal followed.

Plaintiff presents a single issue upon appeal—did the defendant carry the burden of showing the absence of any genuine issue as to all material facts which would entitle defendant to a judgment as a matter of law?

We note here that the Hon. Russell E. Smith, U. S. District Judge, on a motion for summary judgment in the case of Montana-Dakota Utilities Company v. John Wight, Marvel Lowrance, et al., Civil No. 571, U. S. District Court, Billings Division, in an order dated February 18, 1967, held that the documents heretofore numbered 1, 5 and 6 did not disclose any title in Wight as he was not the original permittee, and in the conveyance to Haney no royalty was reserved in him. We have reviewed these documents and the five other documents relied on by plaintiff and arrive at the same conclusion.

Here, plaintiff argues that the court's interpretation of the documents was in error and therefore there is a material issue of fact. Plaintiff further argues that evidence she is prepared to offer establishes that Gunderson was only a nominal party in these transactions and that the receipt of such evidence should not be barred by Montana's dead man's statute, section 93-701-3(3), R.C.M.1947. These arguments however are not compelling nor controlling here, since this action is clearly barred by the doctrine of laches.

Plaintiff claims her right through John Wight. Assuming arguendo, that Wight had a vested interest plaintiff has presented no evidence that such interest was ever asserted by Wight. To the contrary the record shows that the lands were in production of gas in 1935. Wight's knowledge of this fact is disclosed by his filing in the United States Land Office an affidavit explaining his failure to file the May 7, 1928 agreement between himself and Melvin Gunderson was because the royalty accruing to his interest was so insignificant it was not worth burdening the record. We should note here that Gunderson and his heirs have been collecting the royalty in question since 1935.

The laches of her predecessor in interest is only compounded by plaintiff's own laches. Plaintiff acquired John Wight's interest in 1957 and failed to institute suit until 1966 in the federal court and 1969 in the state court. The record shows that Melvin A. Gunderson died some time prior to 1960.

That laches was very applicable to the case presented by the plaintiff here is supported by this Court's holding in Kavanaugh v. Flavin, 35 Mont. 133, 138, 88 P. 764, citing Hammond v. Hopkins, 143 U.S. 224, 12 S.Ct. 418, 36 L.Ed. 134, wherein it is stated:

"No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith, and reasonable diligence, but will discourage stale demands, for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred. The rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transaction having become so obscured by time as to render the ascertainment of the exact facts impossible."

See also Akey v. Great Western Bldg. & Loan Assn., 110 Mont. 528, 104 P.2d 10; Barrett v. Zenisek, 132 Mont. 229, 315 P.2d 1001; O'Hanlon v. Ruby Gulch Min. Co., 64 Mont. 318, 209 P. 1062; Riley v. Blacker, 51 Mont. 364, 152 P. 758.

Further, with respect to the particular nature of the claim here, the plaintiff's laches is exemplified by the rule expressed in 30A C.J.S. Equity § 118, pp. 67, 68, that:

"A person may not withhold his claim, awaiting the outcome of an enterprise, and then, after a decided turn has taken place in his favor, assert his interest, especially where he has thus avoided the risks of the enterprise.

"Accordingly, if the property involved is of a speculative or fluctuating character, more than ordinary promptness is re-

quired of a claimant; he must press his claim at the earliest possible time. This rule is applied with great strictness in the case of oil or mining property, since it is of a specially precarious nature, and is exposed to the utmost fluctuations in value."

In Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 592, 23 L.Ed. 328, the United States Supreme Court found plaintiff guilty of laches, stating:

"The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands today is worth nothing tomorrow; and that which would today sell for a thousand dollars as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit."

This statement has been approved and applied by this Court in Hynes v. Silver Prince Mining Co., 86 Mont. 10, 281 P. 548; Mantle v. Speculator Mining Co., 27 Mont. 473, 71 P. 665..

Thus the documentary evidence presented established that any interest the predecessor in interest or the plaintiff herself may have had, was barred by their respective laches. Such a showing establishes a prima facie case that there was no issue of material fact and defendant is entitled to judgment as a matter of law.

The requirement of the rule being met, the motion was properly granted. The judgment is therefore affirmed.

MR. JUSTICES JOHN C. HARRISON, CASTLES, DALY and HASWELL, concur.