1998-NMCA-061

957 P.2d 526

Fred R. SKAGGS; Jewell Skaggs House; Calvin C. Skaggs; Lavonia Skaggs Arp; Sarah Skaggs Bell; Karen Diane Skaggs, Trustee of the Skaggs Family Trust; Mary Ann Roof; and Jean Wright, Plaintiffs–Appellants and Cross–Appellees,

v.

CONOCO, INC.; Chevron USA, Inc.; Atlantic Richfield Company; Amoco Production Company; MWJR Petroleum Corporation; Oxy USA, Inc.; John H. Hendrix Corporation; Michael L. Klein; Ronnie H. Westbrook; Daniel L. Veirs; KC Minerals, Inc.; Rutter and Wilbanks Corporation; Wayne A. Bissett; Timothy D. Collier; Donald G. Becker, Jr.; and Charles M. Morgan, Defendants–Appellees and Cross–Appellants.

No. 18205.

Court of Appeals of New Mexico.

March 12, 1998.

Certiorari Denied April 21, 1998.

**98**

James L. Reed, Jr., James J. Ormiston, Looper, Reed, Mark & McGraw Incorporated, Houston, TX, Charles H. Coll, Kelly M. Cassels, Sanders, Bruin, Coll & Worley, P.A., Roswell, Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Appellants and Cross–Appellees.

John R. Cooney, R.E. Thompson, Lynn H. Slade, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellees and Cross–Appellants Operating Defendants and MWJR.

Lewis C. Cox, III, Heidel, Samberson, Newell & Cox, Lovington, for Appellees and Cross–Appellants Rutter and Wilbanks

Corp.; John H. Hendrix Corp.; Michael L. Klein; Ronnie H. Westbrook; Daniel L. Veirs; Wayne A. Bissett; Timothy D. Collier; Donald G. Becker, Jr.; Charles M. Morgan; and KC Minerals, Inc.

Vann Culp, Stubbeman, McRae, Sealy, Laughline & Browder, Midland, TX, for Appellee and Cross–Appellant Oxy USA, Inc.

### OPINION

DONNELLY, Judge.

{1} Plaintiffs appeal from an order awarding summary judgment against them, denying their claims for an accounting and damages, and dismissing their petition to quiet title to a mineral leasehold in approximately 2560 acres of land located in Lea County, New Mexico. The central issue presented on appeal is whether the trial court erred in awarding summary judgment to Defendants and denying Plaintiffs' claims.

{2} Defendants have also filed a cross-appeal, alleging that the trial court erred in granting Plaintiffs' partial motion for summary judgment and finding, as a matter of law, that a 1927 drilling and operating agreement signed by J.M. Skaggs in favor of Marland Oil Company of Colorado (Marland) was void *ab initio* because of the failure of J.M. Skaggs' wife to join in the agreement as mandated by New Mexico's former statute requiring the joinder of spouses in conveying a community interest on realty.[1] We affirm the award of summary judgment entered in favor of Defendants. For the reasons discussed herein, our resolution of this issue renders the issues asserted in the cross-appeal moot.

### FACTS AND PROCEDURAL POSTURE

{3} On June 5, 1926, J.M. Skaggs was granted a prospecting permit by the United States Department of the Interior to prospect for and to produce oil and gas on the acreage in question. J.M. Skaggs was married to Mary Maye Skaggs when he acquired the federal permit.

---

1. The statute relied upon by Appellants in this case, 1915 New Mexico Laws, Chapter 84, Section 16, was repealed by 1973 New Mexico Laws, Chapter 320, Section 14. A current version of the prior law was reenacted by 1973 New Mexico Laws, Chapter 320, Section 8.

{4} On February 23, 1927, J.M. Skaggs entered into a drilling and operating agreement with Marland for the lands involved herein. The agreement gave Marland the right to explore, drill, develop, produce, and market any oil and gas discovered on the property, and retain 87.5% of all the oil and gas produced therefrom. A true copy of the 1927 drilling and operating agreement attached to the motion for summary judgment submitted by Conoco, Inc. and other Defendants does not contain the signature of, or indicate that, Mary Maye Skaggs joined in the 1927 drilling and operating agreement.

{5} After J.M. Skaggs executed the 1927 operating agreement, he conveyed all of the royalty interest retained by him to third parties. From 1927 to 1930, J.M. Skaggs cooperated with Marland in obtaining extensions from the Department of Interior for the prospecting permit. On November 6, 1936, J.M. Skaggs and Mary Maye Skaggs were divorced in Gray County, Texas.

{6} Marland assigned its interest in the operating agreement to Continental Oil Company (Continental), which subsequently assigned portions of its interest to certain other named Defendants. On July 2, 1937, the Department of Interior issued an oil and gas lease involving the property in question. After securing several extensions, Continental discovered oil on the property in 1937. Following this discovery, J.M. Skaggs informed the Secretary of Interior that he objected to the issuance of the lease to Continental and other Defendants, and refused to assist in the applications for issuance of a lease for the property. The Department of Interior, however, issued the lease to Continental and its assignees, subject to the provisions of the 1927 operating agreement.

{7} On January 28, 1994, Plaintiffs filed suit against Defendants to quiet title to the property in question, and sought an accounting and damages for the oil produced from the property. Plaintiffs moved for partial summary judgment seeking an adjudication that the 1927 operating agreement signed by J.M. Skaggs was void as a matter of law. Defendants also filed motions for summary judgment, asserting that, as a matter of law, Plaintiffs' claims were barred by the statute of limitations, and the doctrines of laches, ratification, waiver, estoppel, or acquiescence. Following the filing of cross-motions for summary judgment, the trial court ruled, as a matter of law, that the 1927 operating agreement was void, but that Plaintiffs' claims were barred by both laches and the statutes of limitations contained in NMSA 1978, §§ 37–1–3 (1975) and 37–1–4 (1880).

## DISCUSSION

{8} Plaintiffs assert that the trial court erred in denying their claim to quiet title to the property in question and denying their claim for an accounting and damages. In furtherance of this argument, Plaintiffs contend that the 1927 operating agreement created an express trust, giving rise to a fiduciary relationship between the parties, and that the statutes of limitations relied upon by the trial court were tolled until the trust agreement was repudiated. Plaintiffs further argue that because Defendants have never repudiated the trust, the defenses of laches and statute of limitations are inapplicable.

{9} Prior to the entry of its order granting summary judgment in favor of Defendants, the trial court sent a letter to the parties detailing its reasons for denying Plaintiffs' claims. The trial court stated that it was granting Defendants' partial motion for summary judgment and rejecting Plaintiffs' claim of the existence of a fiduciary relationship, and that:

> The long delay—almost sixty (60) years since the 1927 operating agreement—and the clear awareness of the 1927 operating agreement by Mary Maye Skaggs and her heirs appears, as the ... Defendants claim, to be "a textbook example of the circumstances calling for the application of the laches defense."

{10} Our review of the record indicates the existence of undisputed material facts from which the trial court could properly award summary judgment in favor of Defendants as a matter of law. The record discloses that after J.M. Skaggs obtained the prospecting permit to the lands in question in 1927, he entered into a drilling and operating agreement with Marland. Within a year of

execution of that agreement, J.M. Skaggs conveyed *all* of the royalty interest retained by him under the 1927 operating agreement to third parties who ultimately assigned or conveyed their interests to Defendants herein.[2]

{11} It is undisputed that Mary Maye Skaggs wrote to the Department of Interior in 1951 and inquired concerning the status of any interests her husband had in the Lea County property. By letter dated September 25, 1951, the Department of Interior responded to her inquiry advising her that its records revealed that on February 23, 1927, J.M. Skaggs entered into an operating agreement with Marland and such operating agreement was later assigned to Continental and others. The 1951 letter also advised Mary Maye Skaggs that, under the terms of the operating agreement, J.M. Skaggs was to receive an overriding royalty of 7 1/2% on all production from the lands in the lease and that:

> [i]t appears that Mr. Skaggs assigned the entire 7 1/2% overriding royalty in the (a) lease to various parties *and therefore, he no longer holds any royalty interest in either of these leases.* So far as the records show, Mr. Skaggs owns no other oil or gas leases on the public domain. [Emphasis added.]

{12} Plaintiffs do not dispute that Mary Maye Skaggs received this letter advising her of her former husband's execution of the operating agreement and his subsequent assignment of his interests therein. Thereafter, no action was brought by either her or her heirs to contest such transfers until 1994 when her heirs initiated the present action. J.M. Skaggs died on December 12, 1960, and Mary Maye Skaggs died on September 12, 1973.

{13} Plaintiffs' claims were filed over sixty years after J .M. Skaggs transferred the royalty interests, and over forty years after the notification to Mary Maye

Skaggs of the fact of such transfers. Under these circumstances, where it is evident that Mary Maye Skaggs was placed on notice of the fact that the records showed that J.M. Skaggs had transferred such royalty interests, where an extended period of time has transpired during which there was no attempt to enforce any rights claimed by Plaintiffs therein, and where Defendants invested substantial sums in prospecting and developing oil from such properties, the trial court could properly find the doctrine of laches to be applicable. The decision to apply laches is left to the sound discretion of the trial court which we review only for an abuse of discretion. *See Archuleta v. Pina,* 86 N.M. 94, 99, 519 P.2d 1175, 1180 (1974).

{14} Laches will lie when, in addition to other factors, there has been an unexplainable delay of such duration in asserting a claim as to render enforcement of such claim inequitable. *Larson v. Undem,* 246 Mont. 336, 805 P.2d 1318, 1321 (1990). The elements of laches are: (1) conduct on the part of another which forms the basis for the litigation in question; (2) delay in the assertion of the complaining party's rights; (3) lack of knowledge or notice on the part of the defendant that the complaining party would assert such rights; and (4) injury or prejudice to the defendant in the event relief is accorded to the complaining party or the suit is not barred. *Garcia v. Garcia,* 111 N.M. 581, 588, 808 P.2d 31, 38 (1991) (suit to quiet title is subject to defense of laches); *see also Berry v. Meadows,* 103 N.M. 761, 768, 713 P.2d 1017, 1024 (Ct.App.1986) ("The application of the doctrine of laches depends upon the circumstances of each case.").

{15} It is undisputed that both Mary Maye Skaggs and J.M. Skaggs, and other key witnesses, are no longer living and the claims sought to be litigated had their genesis over a half-century earlier. *See Foster v. State,* 752 P.2d 459, 465–66 (Alaska 1988) (plaintiff's claim to property held barred

---

**2.** The trial court's letter to counsel noted that Skaggs *along with his wife* conveyed *all* of the royalty interest retained under the 1927 operating agreement. This was accomplished on November 28, 1927 when they assigned a partial interest to C.H. Kyte, on February 29, 1928, when they assigned a second partial interest to Kyte, and on February 29, 1928, when they assigned a third partial interest to Western Mineral Deed Association. All three assignments were executed by Skaggs and his spouse, Mary Maye Skaggs.

where evidence supports finding of laches, and foreclosure judgment and deed had been a matter of public record for over thirty years). It is also undisputed that Defendants expended monies in exploring, drilling, and developing oil wells on the property in question.[3] From these undisputed facts, the trial court could also determine, as a matter of law, that Defendants were prejudiced by the period of long delay. *See Farrar v. Hood,* 56 N.M. 724, 732–33, 249 P.2d 759, 764–65 (1952) (as a matter of law, laches barred claim to quiet title to mineral interests where there was showing of prejudicial delay); *see also* Henry L. McClintock, *Principles of Equity* § 28, at 71 (2d ed.1948). As noted by Professor McClintock, "[c]ommon forms of prejudice to defendant are loss of evidence to meet the claim of plaintiff, change in situation induced by the delay, and change in the value of the subject-matter involved, [and] ... [p]rejudice to third persons ...." McClintock, *supra* § 28, at 71–72 (footnotes omitted).

{16} We deem the observations of the Montana Supreme Court in *Lowrance v. Gunderson,* 157 Mont. 532, 487 P.2d 511, 514 (1971) (decided on summary judgment), relevant in the instant case. In *Lowrance* the court considered an action to quiet title in certain lands involving an oil and gas royalty interest, and held that equitable factors preclude a person from withholding " 'his claim, awaiting the outcome of an enterprise, and then, after a decided turn has taken place in his favor, assert his interest, especially where he has thus avoided the risks of the enterprise.' " *Id.* (quoting 30A C.J.S. *Equity* § 118, at 67–68 (1965)); *see also Moncrief v. Williston Basin Interstate Pipeline Co.,* 880 F.Supp. 1495, 1513 (D.Wyo.1995) ("It is a well-accepted principle that the doctrine of laches is particularly well-suited for application in the oil and gas and mining areas due to the nature of these property interests.").

{17} Plaintiffs vigorously argue, however, that the trial court erred in granting Defendants' defense of laches. They claim that a fiduciary relationship existed between the

parties by reason of the 1927 operating agreement and the issuance of the 1937 leases indicating that Continental and other Defendants held such leases as "trustees for J.M. Skaggs." Plaintiffs assert that because Continental and other Defendants were trustees, the time for filing such claims was tolled until and unless Defendants repudiated such trust. Plaintiffs, citing *Oldland v. Gray,* 179 F.2d 408, 415–16 (10th Cir.1950) and similar authority, also assert that Defendants fraudulently breached their fiduciary duty by placing their interests above the interests of the alleged beneficiaries. In *Oldland* the court held that where a trust has been found to exist, laches will not bar a claim unless the court determined it is equitable to do so. The court also held that time does not begin to run against a trustee until the trust is openly disavowed by the trustee. Plaintiffs also argue that under *Jack v. Hunt,* 75 N.M. 686, 698, 410 P.2d 403, 411 (1966) and *Kutz Canon Oil & Gas Co. v. Harr,* 56 N.M. 358, 381–82, 244 P.2d 522, 536–38 (1952), our Supreme Court recognized that operating agreements create a fiduciary relationship between the permit holder and the operator.

{18} Although Plaintiffs correctly interpret the foregoing cases as recognizing that execution of certain types of agreements may indeed give rise to the existence of a fiduciary relationship, the trial court here properly determined that the circumstances existing here supported Defendants' claim of laches. In 1951 Mary Maye Skaggs wrote to the Department of Interior inquiring about the status of J.M. Skaggs' exploration lease. The Department of Interior responded informing her that "Mr. Skaggs assigned the entire 7 ½% overriding royalty in the (a) lease to various parties and therefore, he no longer holds any royalty interest in either of these leases." Because Mary Maye Skaggs was placed on notice that any royalty interest in the property had been transferred, there was nothing left upon which one could impute the existence of a trust. Additionally, the

---

**3.** An affidavit of Paul Eyster, submitted in support of Conoco's motion for summary judgment, recited in part that he is a supervisor in Exploration Production Accounting for Conoco, and based on his personal knowledge that since 1937 there have been numerous oil and or gas completions on the land in question.

doctrine of laches incorporates the equitable maxim that "Equity Aids the Vigilant." McClintock, *supra* § 28, at 71. We agree with the trial court that the long delay (1951 to 1994) by Plaintiffs in asserting their claims "makes the laches and limitations defenses viable on the part of the ... Defendants."

{19} We assume, but do not decide, that the operating agreement here which granted an exclusive right to drill on real estate in accordance with a federal oil and gas lease, conveyed an interest in realty so as to bring such instrument within the purview of the then existing statute requiring the joinder of spouses under the circumstances described in 1915 New Mexico Laws, Chapter 84, Section 16. *See Rock Island Oil & Ref. Co. v. Simmons,* 73 N.M. 142, 146, 386 P.2d 239, 241 (1963); *see also Terry v. Humphreys,* 27 N.M. 564, 569–70, 203 P. 539, 541 (1922) (oil and gas lease viewed as "real property" within contemplation of statute governing transfer or conveyance of community interest in realty). However, because we determine that the trial court properly granted Defendants' motion for summary judgment based upon the defense of laches, we need not consider this or the other issues raised by Defendants' cross-appeal.[4] *Does v. Roman Catholic Church,* 1996–NMCA–094, ¶ 12, 122 N.M. 307, 924 P.2d 273 (courts will not decide unnecessary issues).

■ {20} Lastly, Plaintiffs argue that the trial court erred in refusing their discovery requests and denying them access to title opinions or title reports relating to the subject acreage, and opinions or title reports in the possession of Defendants concerning the operating agreement or the leases. Defendants objected to the production of this information based on the attorney-client privilege.

{21} Plaintiffs contend Defendants waived such privilege by pleading affirmative defenses which place the contents of those documents in issue. We disagree. Title opinions have generally been recognized to be privileged communications. *See, e.g., Texaco, Inc. v. Phoenix Steel Corp.,* 264 A.2d 523, 525 (Del.Ch.1970); *see also* Rule 11–503

NMRA 1998. Moreover, it has also been recognized that a party does not waive a claim of attorney-client privilege simply because he or she has asserted an affirmative defense; rather there must be some "offensive use" of the privileged information for waiver to occur. *Marathon Oil Co. v. Moye,* 893 S.W.2d 585, 590–92 (Tex.Ct.App.1994). For example, in the principal case relied upon by Plaintiffs, *Conkling v. Turner,* 883 F.2d 431, 434 (5th Cir.1989), the plaintiff sought to evade application of the statute of limitations in order for his suit to proceed, but he refused to allow his attorneys to be deposed concerning the issue as to when he knew or should have known of facts giving rise to the existence of his claim. The *Conkling* court concluded that such use of the attorney-client privilege " 'would [be] manifestly unfair to the opposing party.' " *Id.* (quoting *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975)). Under the facts presented here, we fail to see how the defense of laches implicates the title opinions sought by Plaintiffs since Defendants have not been shown to have relied upon those opinions to prove their defense of laches. *See* Restatement (Third) of the Law Governing Lawyers § 130 cmt. c, at 231 (Tentative Draft No. 2, 1989) ("Whether an adversary may obtain discovery of materials that otherwise are privileged depends not merely upon what the client pleads but upon the way in which the client will likely prove the assertion. If, for example, the client proposes to prove the allegation [or defense] in ways that do not involve any privileged communication, the exception does not apply.").

CONCLUSION

{22} The order granting summary judgment in favor of Defendants is affirmed.

{23} **IT IS SO ORDERED.**

WECHSLER and BUSTAMANTE, JJ., concur.

---

4. Defendants' brief-in-chief acknowledges that the issues raised in their cross-appeal need only be addressed in the event this Court does not affirm the trial court's determination that Plaintiffs' claims are barred on the defenses recognized by the trial court.