No. 12578

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

HUGH R. ADAIR, II, administrator of the
Estate of Hugh R. Adair, Deceased,

Plaintiff and Appellant,

-vs-

CAPITAL INVESTMENT COMPANY, an expired
Montana Corporation, et al.,

Defendants and Respondents.

Appeal from: District Court of the First Judicial District,
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Daniel J. Sullivan argued, Helena, Montana
James R. Beck appeared, Helena, Montana

For Respondents:

Smith, Smith and Sewell, Helena, Montana
Chadwick H. Smith argued, Helena, Montana

Submitted: May 20, 1974

Decided: JUL 12 1974

Filed: JUL 12 1974

*Thomas J. Kearney*
Clerk

PER CURIAM:

This is an appeal by plaintiff Hugh R. Adair II as administrator of the estate of Hugh R. Adair, from a portion of a judgment rendered in a quiet title action.

Plaintiff alleges that in 1947 Hugh R. Adair, late Justice of the Montana Supreme Court, purchased certain real property located in Helena, Montana. However the identity of the party furnishing the consideration for the purchase was never firmly established.

Included in the property purchased was a three-quarter interest in Lots 9 through 16 in Block 35 of the C.W. Cannon Addition to the city of Helena.

After the lots were purchased, they were placed in the name of Judge Adair's mother-in-law, Ruth L. Janes. Mrs. Janes subsequently received a deed to the property.

No improvements were ever made on the lots and they were rarely used except in the wintertime when the Judge would take his young son, Hugh R. Adair II, to the property for tobogganing and skiing.

Judge Adair personally paid the taxes on the property until 1969 when he suffered a severe stroke and was incapacitated. Hugh R. Adair II, his son, was then appointed as his guardian and paid the taxes on the property as the guardian and later as the administrator of the estate after Judge Adair died in 1971.

In 1949, Ruth L. Janes died intestate and left as her heirs a son, Virgil Janes, and one daughter, Dorothy Nahrgang. Jeanice Adair, another daughter of Ruth L. Janes, had been the wife of Judge Adair and was the mother of Hugh R. Adair II, plaintiff in this action. Jeanice Adair predeceased her mother.

Virgil Janes died in 1970 and left as his heirs, his wife Hazel Janes and two sons, Robert and Gary Janes, all of whom are defendants in this action. Prior to this action, Dorothy Nahrgang

transferred her interest in the property to Hugh R. Adair II, so her interest is not in dispute.

Plaintiff Hugh R. Adair II brought a quiet title action contending that a resulting trust had arisen in favor of Judge Adair because of section 86-103, R.C.M. 1947, which states:

> "When a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

Thus, plaintiff argues that a resulting trust had arisen in favor of Judge Adair and as the only heir he is entitled to the property free from the claims of defendants, because Judge Adair had furnished the consideration for the purchase of the property and placed the title to the property in the name of Ruth L. Janes.

In support of his claim plaintiff offered into evidence a letter written by Judge Adair to the county commissioners of Lewis and Clark County which protested the assessed value of several parcels of property, including the property in dispute. Defendants interposed a hearsay objection to this letter which was sustained after memoranda were filed and arguments were heard.

After making findings of fact and conclusions of law, the district court held that no resulting trust had arisen because the evidence was not "clear, convincing and satisfactory and practically free from doubt", a requirement stated by this Court in McQuay v. McQuay, 81 Mont. 311, 263 P. 683.

The district court then entered judgment, a portion of which granted Hugh R. Adair II an undivided two-thirds of an undivided three-quarter interest in Lots 9 through 16 of Block 35 of the C.W. Cannon Addition to the City of Helena. The judgment reflects plaintiff's one-third interest as an heir of Jeanice Adair, and a one-third interest as a result of the conveyance from Dorothy Nahrgang. The remaining one-third interest in the property was quieted in favor of Hazel Janes and her two sons, Gary and Robert.

Plaintiff appeals from this judgment and presents three issues to this Court for review:

- 3 -

1. Is plaintiff's claim barred by laches?

2. Did the district court err in holding that no resulting trust had arisen in favor of Judge Adair?

3. Did the district court err in sustaining a hearsay objection to the letter written by Judge Adair protesting the assessed value of the property in dispute?

We believe this case can be decided by a holding on the issue of laches, therefore we will not discuss the second and third issues.

This Court has examined the equitable doctrine of laches on numerous occasions, particularly in its application to attempts to assert the existence of a resulting trust. In Riley v. Blacker, 51 Mont. 364, 370, 152 P. 758, this Court stated:

> "Laches, considered as a bar independent of the statute of limitations, is a concept of equity; it means negligence, in the assertion of a right; it is the practical application of the maxim, 'Equity aids only the vigilant'; and it exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable. Therefore has it often been held by this court that: While a mere delay short of the period of the statute of limitations does not of itself raise the presumption of laches [citing cases], yet 'good faith and reasonable diligence only can call into activity the powers of a court of equity, and, independently of the period fixed by the statute of limitations, stale demands will not be entertained or relief granted to one who has slept upon his rights. Considerations of public policy and the difficulty of doing justice between the parties are sufficient to warrant a court of equity in refusing to institute an investigation where the lapse of time in the assertion of the claim is such as to show inexcusable neglect on the part of the plaintiff, no matter how apparently just his claim may be; and this is particularly so where the relations of the parties have been materially altered in the meantime.' [citing cases]. What constitutes a material change of condition has been the subject of much judicial discussion and some judicial dissension; but whatever doubt there may be as to other circumstances, it never has been questioned, to our knowledge, that the death of one of the parties to the transaction is such a change."

Riley is frequently cited to illustrate the proper application of the doctrine of laches. See: Clary v. Fleming, 60 Mont. 246, 198 P. 546 (1921); First State Bank of Philipsburg v. Mussigbrod, 83 Mont. 68, 271 P. 695 (1928); Lewis v. Bowman, 113 Mont. 68, 121 P.2d 162 (1942); Barrett v. Zenisek, 132 Mont. 229, 241, 315 P.2d 1001 (1957); and Lowrance v. Gunderson, 157 Mont. 532, 487 P.2d 511 (1971).

In _Barrett_ an action was brought to establish a resulting trust with respect to certain real property. The district court held the claim was barred by laches. In affirming the district court, this Court stated:

> "It has frequently been stated by this court that the doctrine of laches is especially applicable in those cases where there has been a change of circumstances, or where the positions of the parties have been materially altered. This court has gone on to say that the death of one of the parties or a material witness is such a change of position warranting the application of the equitable bar--laches. [citing cases]."

The rationale of _Barrett_ is pertinent to the instant case. Both of the principal parties to the disputed transaction are now dead. Ruth L. Janes died in 1949 and Judge Adair died in 1971. Virgil Janes and Jeanice Adair, whose testimony might have clarified the transaction, are also dead. The death of these parties clearly warrants the application of the equitable doctrine of laches.

Equity cannot be brought to the aid of those who have slept on their rights for twenty-four years. Considerations of public policy and the difficulty of doing justice between the parties require us to hold that the claim is barred by laches, especially since the principal parties to the transaction are now dead and facts relating to the transaction have been obscured through the passage of time.

Judgment is affirmed.