No. 13150

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA, ON THE RELATION
OF VICTOR'S,INC., A Montana Corporation,

Relator and Applicant,

-vs-

THE DISTRICT COURT OF THE EIGHTH JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND
FOR THE COUNTY OF CASCADE; THE HONORABLE
B. W. THOMAS, District Judge, Being the
Presiding Judge and the City of Great Falls,
A Municipal Corporation,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Smith, Emmons and Baillie, Great Falls,
Montana
Robert J. Emmons argued, Great Falls, Montana

For Respondents:

Alexander, Kuenning, Miller and Ugrin, Great
Falls, Montana
Paul D. Miller argued, Great Falls, Montana

---

Submitted: September 30, 1975

Decided: JAN 7 1976

Filed: JAN 7 1976

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This matter is before the Court on an application by Victor's, Inc., defendant in the district court, for a writ of supervisory control or other appropriate writ, directed to the district court, Cascade County, and to the presiding judge, assuming and taking jurisdiction of all further proceedings in that certain cause in said court, being Cause No. 78667-B, entitled "CITY OF GREAT FALLS, a municipal corporation, and GREAT FALLS INTERNATIONAL AIRPORT AUTHORITY, Plaintiffs, vs. VICTOR'S, INC., a Montana corporation, Defendant". This Court was asked to review the judgment entered therein on July 16, 1975, as amended by order of the district court dated August 8, 1975, and to reverse the judgment and render judgment for relator and applicant herein, Victor's, Inc. Prior to this application Victor's, Inc. had filed its notice of appeal from the final judgment of the district court. This Court deemed the appeal to be inadequate, consolidated the appeal [this Court's #13149] with this application [this Court's #13150], and assumed jurisdiction under supervisory control. The matter was briefed, heard in oral argument and submitted.

In 1947 the City of Great Falls, a municipal corporation, obtained from the Montana Liquor Control Board a beer and a liquor license to operate a liquor business to be known as the "Great Falls Municipal Airport Lounge", located at the Great Falls Municipal Airport. This airport is outside the corporate limits of the City of Great Falls.

Simultaneously the City, as lessor, and Donald F. Robinson, as lessee, entered into a lease agreement for restaurant, bar, and cocktail lounge facilities at the Great Falls Airport. The lease provided in part:

"8. Party of the first part [City] is the owner
of beer and liquor permits numbered 1059 and 990
respectively. It is covenanted and agreed that
said permits will be assigned to and operated under
the name of party of the second part [Robinson] for
the duration of this lease, to be re-assigned to party
of the first part upon the termination of said lease
for any cause whatsoever. * * *"

The City was to be paid a percentage, based on the gross receipts
of Robinson's operation.

On May 8, 1948, the City submitted a signed assignment
of interest to the Montana Liquor Control Board  which provided:

"For a good and valuable consideration and subject
to the approval of the Montana  Liquor Control
Board, I hereby sell, assign, transfer and set
over unto Don F. Robinson * * * all right, title
and interest in and to [the beer and liquor licenses]".
(Emphasis supplied).

The assignment was signed by the mayor of Great Falls. The City
did not take any security interest in the licenses.

In November 1952, the City and Robinson executed a new
lease for the airport lounge facilities for a term of five years.
This lease contained a provision which was to be used in all
leases between the City and various lessees of the airport lounge
until the present lease with Victor's, Inc.  The provision changed
from the original lease reads:

"8. Party of the First Part [City] was originally
the owner of the State of Montana retail beer and
liquor licenses used in the operation of said bar
and cocktail lounge operated by party of the Second
Part in the above-described premises,  and said
licenses have been assigned to and are now in the name
of party of the Second Part; it is covenanted and
agreed that said permits and licenses are to be oper-
ated under the name of party of the Second Part and
that party of the Second Part will continue to pay
for all of said licenses and the renewals of all of
said licenses, and shall pay all fees, taxes and
charges assessed under Federal, State, or Local statutes
and ordinances, insofar as they are applicable, and
that party of the Second Part will assign to party of
the First Part upon the termination of this lease all
of said beer and liquor licenses." ( Emphasis supplied.)

The compensation paid by the lessee was changed from a percentage of
the gross to a set monthly rental figure.

The licenses were transferred a number of times and eventually transferred by the Horizon Club to Victor's, Inc. in 1962 under a Horizon Club lease which was to expire in 1964. In each case the assignment accompanied a sale of the lounge and fixtures themselves together with a transfer of the licenses from one owner to the other and mortgages placed upon the licenses by vendee or bank and filed with the Montana Liquor Control Board, to secure payment under the transaction. In March 1966, Victor's, Inc. executed its own lease agreement with the City. The section providing for control of the licenses is somewhat different than the past leases in that it only provides that lessee assign <u>his interest</u> <u>and not the licenses themselves</u> in this language:

> "Lessor was originally the owner of the State of Montana retail beer and liquor licenses used in the operation of said bar and cocktail lounge operated by Lessee in the above-described premises, and said licenses have been assigned to and are now in the name of the Lessee; it is covenanted and agreed that said permits and licenses are to be operated under the name of Lessee and that Lessee will continue to pay all of said licenses and renewals of all of said licenses, and shall pay all fees, taxes and charges assessed under Federal, State, or Local statutes and ordinances, inso-far as they are applicable. <u>Lessee shall, upon termin-ation of this Lease, assign to Lessor all of his interest in and to said Beer and Liquor license; PROVIDED, how-ever, that if Lessee assigns this Lease or sub-leases the premises as herein provided in Paragraph 12, Lessee may sell and assign, solely with written consent of Lessor his interest in said Lease to the Assignee or Sub-Lessee.</u> (Emphasis supplied).

Lessee argues that the word "Lease" in the last line of the above quoted paragraph is in error and makes no sense as used and should be "license".

The City of Great Falls has constructed a new airport terminal building and has contracted with an out of state firm designated Dyneteria, Inc., to operate the food and lounge facility and has contracted to furnish Dyneteria, Inc. the licenses in question here. The lease with Victor's, Inc. expired and the City brought an action against Victor's, Inc. to specifically en-force the lease provision with respect to assignment of the retail

liquor and beer licenses and that Victor's, Inc. be ordered to assign to the City or its designee.

The matter was tried to the district court and extensive findings of fact were determined by the court together with conclusions of law which in essence found that the City had never received any consideration for the licenses; that neither Victor's, Inc. nor its predecessors paid a separate consideration for the licenses on acquisition; that there was adequate consideration [unspecified] to support transfer of the licenses to the City upon termination by Victor's, Inc.; that the City could legally hold a liquor and a beer license; and that defendant Victor's, Inc. transfer the licenses to the City within thirty days or the clerk of court would be authorized to complete the transfer of the licenses to the City.

Victor's, Inc. presents many issues for review, however, the controlling issue is whether the City must pay consideration to Victor's, Inc. for the assignment of its interest in the liquor and beer licenses to the City or its designee.

The suit is a specific performance action which means it seeks to compel the performance of a contract in the precise terms agreed upon. The foundation of a suit for specific performance of a contract is that by compelling the parties to do the very things whey have agreed to do more complete justice is attained than by giving damages for breach of contract. It is an extra-ordinary remedy, which was not recognized at common law. So, specific performance is purely an equitable remedy and is governed by equitable principles. 81 C.J.S. Specific Performance § 1, p. 408.

In 81 C.J.S. Specific Performance § 3, p. 411, it is stated:

> "* * * specific performance will be ordered only on equitable grounds in view of all the conditions surrounding the particular case. * * *

- 5 -

"A bill in equity for specific performance is an appeal to the conscience of the court, and generally, in such a proceeding, the inquiry must be whether, in equity and good conscience, the court should specifically enforce the contract."

Section 17-808, R.C.M. 1947, states that specific performance cannot be enforced against a party to a contract if that party "has not received an adequate consideration for the contract." Whether consideration is adequate for a given contract depends on the facts and circumstances of each case. Therefore, we are required to closely examine the facts and circumstances surrounding this case to determine whether the consideration in the contract was adequate to equitably justify the assignment of Victor's, Inc.'s interest in the licenses to the City.

Although this suit is brought only to enforce a provision in a lease between the City and Victor's, Inc., the determination as to whether the consideration for assignment of Victor's, Inc.'s interest was adequate cannot be made by looking only to the contents of the lease. In negotiations for the lease, the City and Victor's, Inc. were aware of the fact that Victor's, Inc. had paid a substantial amount of money for interest in the bar fixtures, licenses and the previous lease. Both parties were also aware of the fact that although all previous leases contained provisions requiring assignment of the alcohol licenses themselves upon termination of the lease, this provision had never been employed by the City--although the opportunity for its use had arisen on four occasions.

These additional facts are pertinent here. The district court held:

"\* \* \* At no time did the City of Great Falls ever receive any independent or separate consideration or payment for transfer by it of the liquor and beer licenses to Robinson or to any of the other lessees, including defendant."

As heretofore set forth, the City in dealing with Robinson first claimed ownership of the licenses. Thereafter the City filed a document with the Montana Liquor Control Board setting forth that the City "For a good and valuable consideration \* \* \* sell, assign and transfer and set over unto Don F. Robinson \* \* \* all right, title and interest in and to \* \* \*" the licenses here in question. Thereafter, the lease arrangement was altered to set forth that the City was the original owner, rather than owner.

Robinson and all subsequent lessees and sublessees were allowed to sell their interests in the bar fixtures, licenses and the lease to the succeeding lessee for whatever price the current business market would bear. The City was involved in these sales only to the extent of consenting to the assignments. The City at no time received the licenses from the vendor-assignor and then reassigned the licenses to the vendee-assignee. Four previous leases expired and the City did not demand return of the licenses.

Public-record ownership [at the Montana Liquor Control Board] showed the lessees to be the sole owners of the licenses. Section 4-410, R.C.M. 1947, requires that the names of all persons interested in the license must appear on the application for the license. Section 4-412(7), R.C.M. 1947, provides that a license may not be issued to one "who is not the owner and operator of the business." (Emphasis supplied).

All applicable federal, state and local fees and taxes attendant with the licenses were paid by the lessees, including Victor's, Inc.

On three occasions, the licenses were mortgaged by various lessees to a bank or other corporation for loans of money. The licenses were used as collateral and the mortgages duly recorded

with the Montana Liquor Control Board as required by law. The City consented to all three mortgages. Montana Bank of Great Falls is currently a mortgagee of the licenses on a loan for approximately $40,000.

On two occasions - in 1954 and 1955 - contracts for sale were used to convey the assignment of the lease and licenses from one lessee to another. Language in the contracts provided that upon default, the licenses would be set over to the vendor-lessee and they shall belong to the vendors. No mention of the City's "ownership" is made in these contracts. Copies of these contracts were filed with the Montana Liquor Control Board and the City.

Extensive argument was presented concerning the negotiation with Palmer, the airport manager, and Victor's, Inc. on the very point of compensation for the licenses upon termination or sale. It seems to be admitted that this took place and Palmer did have authority to negotiate airport contracts, but former members of the airport commission could not confirm any agreements on this issue. Yet, coincidently at this time, the City elected to change the language as it pertained to reassignment in the lease from a reassignment of the licenses to a reassignment of lessee's [Victor's, Inc.] interest in the licenses. Together with all of these facts there is a disputed probability that the same lease interest assignment clause gave Victor's, Inc. the right to sell its interest in the licenses upon assignment, with consent of the City.

Indulging the City with the presumption, which we think we must, that it complied with the laws of the state of Montana and that all of its dealings with its lessees were honest and open and none were intended to evade the licensing laws of the state of Montana and its affirmative acts or non-action over the term of these transactions indicated its intentions, the City could have no interest in the licenses themselves. It did at all

times by lease agreement provide that the licenses must stay with the location by assignment when the lessee terminated his business relationship with the City. Victor's, Inc. agrees that the licenses cannot be moved from the airport.

These licenses are personal property and have a recognized value above and beyond the fees paid to the various government agencies. These licenses acquired this type of value because the City never required nor controlled the reassignment of the licenses when a lease terminated. If the City had enforced the lease provisions it could have reassigned the licenses on each transaction and the new lessee would then not have been required to pay the seller for the licenses.

The City did not do this. It acquiesced in the transfers directly from party to party for cash consideration with the result that the licenses acquired value to the parties and they paid consideration for them. Victor's, Inc. was therefore entitled to rely upon the acts and conduct of the City that, when the time came for an assignment from Victor's, Inc., it could assign to the new operator of the business and be compensated for the value of the licenses.

However, the City decided to assign the licenses to the new lessee, Dyneteria, Inc., without compensation from it and now demands that Victor's, Inc. make a gratuitous assignment. As heretofore stated, the City has the right to insist on Victor's, Inc.'s assignment of its interest in the licenses but if the City would like to bestow this gratuity upon Dyneteria, Inc., the City must compensate Victor's, Inc. in an amount equal to the true market value of the personal property.

The City claims and the trial court held that adequate consideration supported the transfer demanded by the City, although the court did not specify the nature of the consideration.

- 9 -

Generally speaking, consideration is the price bargained for and paid for a promise. 17 C.J.S. Contracts §70, p. 747. Consideration sufficient to warrant specific performance for the assignment of valuable personal property such as liquor licenses just be obvious and unambiguous. In reviewing the consideration for the two contracts, the consideration which supports the lease between the City and Victor's, Inc. was similar to the consideration which had supported earlier leases between the City and prior lessees. The lessee was to pay the City monthly rent ($600 per month in the current lease) and operate the lounge under established minimum specifications. The City in return leases the space to the various parties.

The consideration which supported the sales and assignments of interest between successive lessees was an exchange of money, either directly or under a contract for sale, in return for the package of (a) bar fixtures, (b) licenses, and (c) leasehold. The interest in those three items was sold as a unit, but it is clear that the most important item of the three was the licenses. A liquor license is a valuable piece of personal property. Witness the $40,000 mortgage obtained by Victor's, Inc. from a bank with the beer and liquor licenses used as collateral. Stallinger v. Goss, 121 Mont. 437, 438, 193 P.2d 810. If all that was sold between vendor and vendee lessees was the fixtures in a leased bar, it is certain that the sale price would be substantially less than if beer and liquor licenses also were included in the sale.

The City claims that the "City's willingness to allow the transfer of the licenses and lease to [Victor's, Inc.] and to permit [Victor's, Inc.] to continue in possession of the premises after expiration of the initial lease is all the consideration which is necessary to support the agreement to reassign." With this, we cannot agree.

The City's willingness to allow the transfer of the lease interest and to permit Victor's, Inc. to continue in possession of the premises is consideration sufficient only to obligate Victor's, Inc. to pay the rent and abide by the other general terms of the lease, excluding the reassignment provision. It stretches the imagination of fairness to say that the City's willingness to allow the transfer of the licenses to Victor's, Inc. (i.e., to allow Victor's, Inc. to pay fair market value for the licenses to a third party) is consideration fully sufficient or adequate to force Victor's, Inc. to assign the licenses to the City.

In examining the above two contracts and especially the rather standard lease arrangement, together with the consideration which supported them, we do not find consideration to support the assignment of the licenses to the City or Dyneteria, Inc.

The judgment of the district court is reversed and the cause remanded to the district court with instructions to determine fair market value of the licenses to be paid Victor's, Inc., and the completion of the transaction in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 11 -