No. 13198

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

E. P. SCHLEGEL,

                    Plaintiff and Appellant,

-vs-

SHERMAN MOORHEAD and ROSELLE
MOORHEAD, husband and wife,

                    Defendants and Respondents.

---

Appeal from:  District Court of the Ninth Judicial District,
              Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

    For Appellant:

        Smith, Emmons, Baillie and Walsh, Great Falls,
        Montana
        Robert J. Emmons argued, Great Falls, Montana

    For Respondents:

        Frisbee and Moore, Cut Bank, Montana
        John P. Moore argued, Cut Bank, Montana

---

                              Submitted:  June 2, 1976

                              Decided: AUG 30 1976

Filed: AUG 30 1976

*Thomas J. Kearney*
                                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff appeals from the judgment of the district court dismissing his complaint for specific performance of an option to purchase a federal oil and gas lease from the defendant.

The pertinent facts are set forth as shown by the district court findings of fact and the record. Defendant Sherman Moorhead has been the owner since 1956 of federal oil and gas lease number 073 151 (a), consisting of 120 acres in Glacier County, Montana. He acquired the lease for salvage and has maintained only one producing well on the acreage. Said well has not produced sufficient revenue to pay the annual royalty. At all times pertinent hereto Moorhead employed a pumper who operated the well.

Moorhead worked in the oil fields in Glacier County from 1937 to 1964 and is familiar with oil field operations and terms. He has little experience with the business end of oil operations, and no previous experience with options. Within three years of the time of the option in dispute here, he twice attempted to sell the lease with no success. At no time relevant to this case did he make any effort to learn of oil field developments in the vicinity of his lease by making inquiries of his pumper, his attorney in the area, or the public records at the Oil and Gas Commission office in Shelby, Montana. Moorhead lived in Butte, Montana from 1964 to the time of this lawsuit.

Plaintiff Schlegel is a United States citizen who lived in Calgary, Alberta, Canada from 1952 to 1973. He has been engaged in oil fields as a roughneck, has sold real estate, and has bought and sold oil leases. He decided to leave Canada in 1973 due to his dissatisfaction with Canadian politics, and resolved to engage in the oil business in Montana.

In November 1973, Schlegel visited the Oil and Gas Commission offices in Shelby, Montana and met a geologist. The geologist recommended Township 37 N, Range 5 W as an area to review for possible lease opportunities. This township is where Moorhead's lease is located. From the public records in the Shelby office of the Oil and Gas Commission Schlegel learned that most of the acreage in that area was held by Union Oil. Union Oil declined to farm out any acreage to Schlegel. From his review of the records, Schlegel became aware of the lease held by Moorhead.

Schlegel learned from his examination of the public records at Shelby that Union Oil recently had brought in a well designated as "Kruger 4E13", and that the well was capable of producing oil and gas in commercial quantities. He also learned the figures reported for the early stages of oil and gas flow, that the well was located on acreage adjoining land covered by the Moorhead lease, and that Union Oil had located another drilling site, known as "Kruger 5E13", also on land adjacent to the Moorhead lease.

On a date prior to January 12, 1974, Schlegel made a telephone call to Moorhead and asked him whether he was interested in selling his lease. Moorhead replied that he was, and set a price of $5,000. Three subsequent telephone calls by Schlegel to Moorhead established further information about the lease, and set the purchase price at $5,000 provided that Moorhead give Schlegel a 90-day option to purchase for a $100 consideration. On January 18, 1974, Schlegel called Moorhead and advised him that he had prepared the option and would come to Butte to meet Moorhead on the following day to close the deal. Moorhead agreed.

On January 19, 1974, Schlegel and his wife met with Moorhead at a motel in Butte. Schlegel brought with him a form

of option agreement which he had prepared. Moorhead then read over the option. There was no further discussion of the terms of the option, but in the course of conversation Moorhead asked Schlegel why he was interested in the lease and Schlegel replied that he had a general interest in the area and had become dissatisfied with the political situation in Canada. Schlegel did not then or at any time tell Moorhead of the information which Schlegel had obtained relative to the well Kruger 4E13 or the location of Kruger 5E13, both on land adjoining land covered by the Moorhead lease. The option was signed by the parties in the presence of a signing witness. Moorhead accepted from Schlegel a draft for $100 as payment of the option consideration.

Thereafter, on two occasions within the option period, Schlegel accepted and exercised the option to purchase Moorhead's lease and tendered $4,900 to Moorhead as payment therefor. Moorhead refused the tender and refused to carry out the option on both occasions.

Schlegel sued for specific performance of the option to purchase the oil and gas lease. Moorheads answered and counterclaimed for: (1) cancellation or rescission of the option on the ground of fraud; (2) damages of $5,000 for slander of title; and (3) actual damages and exemplary damages for fraud, totalling $56,000.

The district court of the ninth judicial district, sitting without a jury, Honorable B. W. Thomas presiding, concluded as a matter of law that neither plaintiff nor defendant-counterclaimants were entitled to the relief prayed for. Judgment was entered in favor of defendants against plaintiff's complaint; the complaint was dismissed; and judgment was entered in favor of plaintiffs against defendants' counterclaim. Only the plaintiff Schlegel appeals from the judgments of the district court.

The issues on appeal are:

1. Did the district court err in refusing specific performance of the option on the ground that Schlegel failed to inform Moorhead of the existence and location of the Kruger wells 4E13 and 5E13?

2. Did the district court err in refusing specific performance of the option on the ground of inadequacy of consideration?

3. Did the district court err in considering the testimony of defendants' expert witness?

We preface our discussion of the issues with a statement of the rule enunciated in Interior Securities Co. v. Campbell, 55 Mont. 459, 470, 178 P. 582:

> "A decree for specific performance is not granted as a matter of abstract right, but in every instance the application for such relief is addressed to the sound, legal discretion of the court. * * * The case comes within the general rule, often adverted to by this court, that in the absence of a clear showing of abuse of discretion the decision of the lower court will be affirmed."

See also: Babcock v. Engel, 58 Mont. 597, 194 P. 137.

The focus of Schlegel's assignments of error is upon the district court's finding of fact No. 25 and conclusion of law No. 3. The former reads:

> "25. Enforcement of the option agreement would be unjust and unreasonable as to Moorhead because of (a) the inadequacy of the consideration, and, (b) the failure of Schlegel to fully and candidly inform Moorhead of the completion of Kruger well 4E13 and the location of Kruger 5E13 when he replied to Moorhead's January 19th inquiry as to why he was interested in the lease."

Conclusions of law No. 3 is similar, omitting the words "fully and candidly".

It is clear that said finding and conclusion are based upon section 17-808, R.C.M. 1947, which states in relevant part:

> "What parties cannot be compelled to perform.
> Specific performance cannot be enforced against

- 5 -

a party to a contract in any of the following
cases:

"1.  If he has not received an adequate consid-
eration for the contract;

"2.  If it is not, as to him, just and reasonable;

"3.  If his assent was obtained by the misrepresen-
tations, concealment, circumvention, or unfair
practices of any party to whom performance would
become due under the contract * * *."

As to the first issue, Schlegel contends that the option

transaction was at arms length and there was no duty upon him to

disclose to Moorhead his knowledge gained from public records

which were equally accessible to Moorhead.  On the other hand,

Moorhead argues that Schlegel is guilty of a multitude of frauds,

a position which was rejected by the district court.  However,

our task is to determine whether the district court abused its

discretion in refusing specific performance, and we need not

resolve the conflicting arguments of the parties concerning actual

and constructive fraud and the like.

It is undisputed that Schlegel was aware of the Kruger

wells on January 19, 1974, and of the fact that they had sub-

stantial production potential.  It is also established that when

asked "why" he was interested in Moorhead's lease, Schlegel said

he had a "general" interest in the area.  The question is not

whether Schlegel's answer was fraudulent or not, but whether

Moorhead's assent was obtained by the "misrepresentations, con-

cealment, circumvention, or unfair practices" of Schlegel.  Sec-

tion 17-808(3), R.C.M. 1947.  This distinction is significant be-

cause under section 17-808 a court in equity has far more latitude

in assessing the conduct of the parties before it than does a

court determining the legal elements of fraud.  As stated in

Interior Securities, supra:

" * * * To secure the desired relief [specific
performance] in this instance, appellants were

- 6 -

required to come into court with clean hands and with a cause whose ethical qualities were such as to commend it to the conscience of the chancellor. * * *"

The district court specifically found that Schlegel did not affirmatively misrepresent a lack of development in the area, and this finding is not challenged here. However, it is not necessarily inconsistent for the district court to hold that enforcement against Moorhead would be unjust and unreasonable due to Schlegel's concealment or circumvention in answer to Moorhead's question. In short, we do not find an abuse of discretion on this point.

The second issue concerns the inadequacy of the consideration. Section 17-808(1) makes this factor a defense to an action for specific performance of contract. Babcock v. Engel, 58 Mont. 597, 194 P. 137. The district court made no finding as to the specific value of the lease, and Schlegel argues that therefore it cannot properly find, as it did in finding of fact No. 24, that the "option price of $5,000.00 was disproportionate to the real value of the lease in the light of information available from public records on January 19, 1974."

We cannot agree with Schlegel's contention. There is ample evidence in the record to show that the Kruger 4E13 and 5E13 wells were in close proximity to Moorhead's lease and were anticipated to be put into commercial production. Kruger 4E13 was shown to have produced substantial quantities of oil, and for the reasons appearing hereafter, it was sufficient to support the findings.

The final issue is whether Moorhead's expert witness' testimony should have been considered by the district court. Virgil Chamberlain testified for the Moorheads on the value of the Moorhead lease. His testimony was founded upon his own extensive knowledge and experience in the area, and upon the

public records of the production of the nearby Kruger 4E13 well. The objections to this testimony were overruled as to admissibility, but the testimony was weighed in light of the grounds for the objections.

Schlegel's assignment of error on this point is related to the second issue, inadequacy of consideration. He argues that Chamberlain's value estimate of over one million dollars is so speculative and inaccurate as to vitiate the district court's finding No. 24 that $5,000 was disproportionate to the value of the lease. However, the district court did not specifically refer in its findings on consideration to the valuation given by Chamberlain. Furthermore, as was pointed out in our discussion of the second issue, there is evidence to sustain the district court's finding of inadequacy of consideration independently of Chamberlain's testimony. Therefore, assuming any error in the admission of said testimony, it is harmless and cannot be the basis of a reversal on appeal. Cf. Benner v. B. F. Goodrich Co., 150 Mont. 97, 430 P.2d 648.

In view of the foregoing, we hold that the district court did not abuse its discretion by refusing to grant to Schlegel specific performance of the option to purchase Moorhead's oil and gas lease.

The judgment of the district court is affirmed.

_____
                              Justice

We concur:

_____

_____

_____
Justices

Hon. Edward T. Dussault, district
judge, sitting in place of Mr.
Chief Justice James T. Harrison.

- 8 -