No. 13607

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

EDWIN A. SEIFERT, JR.,

Plaintiff and Appellant,

-vs-

EDWIN A. SEIFERT and CHRISTINE
SEIFERT and EDWIN A. SEIFERT RANCH,
a Montana Corporation,

Defendants and Respondents.

---

Appeal from:   District Court of the Eighteenth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

William Gilbert argued, Bozeman, Montana

For Respondents:

Bennett and Bennett, Bozeman, Montana
Lyman Bennett, Jr argued, Bozeman, Montana

---

Submitted:   May 24, 1977

Decided: AUG 17 1977

Filed: AUG 17 1977

_Thomas J. Kearney_
                                    Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court, Gallatin County, denying plaintiff's motion for summary judgment, but granting defendants' motion for summary judgment.

This case comes to this Court from the district court where the parties stipulated no disputed facts existed and the district court might consider the parties' motions for summary judgment upon the filed briefs.

The district court granted defendants' motion for summary judgment. No reasons for its conclusion were given by the district court.

On March 1, 1965, the parties here entered into a written lease and option agreement. From this lease option agreement, plaintiff, Edwin A. Seifert, Jr., was granted the option to purchase the real property owned by defendants Edwin A. Seifert and Christine R. Seifert for the sum of $150,000. The lease period was 5 years beginning March 1, 1965. The terms of the lease included 2000 acres of the Edwin A. Seifert Ranch, together with all equipment, farm machinery and buildings, except defendants' residence. Plaintiff was given the privilege to renew the lease for an additional 5 years, upon the same terms, at any time during the original term.

Under the lease portion of the agreement, defendants were to receive 1/2 of all crops harvested and pay 1/2 of all expenses for fuel, seed, repairs and other incidental farm expenses.

For the consideration of $1.00, plaintiff was given the exclusive option to purchase the Edwin A. Seifert Ranch at any time during the term of the lease, or any renewal thereof, for the sum of $150,000.

On February 28, 1970, plaintiff sent a written notice

to renew the lease and option for an additional 5 years. $1.00 consideration was submitted with the notice. Defendants requested their attorney return the $1.00 consideration and refused to sign acknowledging receipt of the notice.

Plaintiff and defendants continued operating the ranch as before, but defendant, Edwin, Sr., stated in his deposition:

"Q. Up to that time, Ed, had you and Eddy been working back and forth farming, you helping him with his farming and he helping you with yours?
A. Right.

"Q. Has there ever been any real change in that?
A. Well, not until starting of 1971, where it got to be more of a load for me and he has done less.

"Q. Has Ed Jr. ever made any arrangements to give you any compensation for your labor? A. Never mentioned it.

"Q. Was it ever discussed? A. No.

"Q. Was the fact of repair ever discussed? A. No.

"Q. Did it seem to you like you had a tenant? Or, it was the same old ranch? A. Well, I began to think I was the boss and the hired man both."

On January 17, 1975, plaintiff sent a letter to defendants with his personal check of $150,000 in payment of the purchase price under the option agreement. In that letter, plaintiff gave notice he was exercising his option to purchase the land as outlined in the lease option agreement dated March 1, 1965. On January 21, 1975, defendants through their attorney, refused to accept the personal check of plaintiff. A second tender of a bank money order was submitted, but this also was rejected by defendants.

After various attempts to settle their dispute failed, plaintiff filed suit for specific performance. Following joint motions for summary judgment the district court ruled in favor of defendants. Plaintiff appeals from that order.

The issues on appeal are:

1.  Did the district court err by not granting plaintiff's motion for summary judgment?

2.  Did the district court err by granting defendants' motion for summary judgment?

Plaintiff brought this suit to compel specific performance of the contract dated March 1, 1965. Specific performance is an equitable remedy which compels the performance of a contract in the precise terms agreed on. The foundation of a suit for specific performance of a contract is that, by compelling the parties to do the very things they agreed to do, more complete and perfect justice is attained than by giving damages for breach of a contract. Specific performance is purely an equitable remedy; presenting a purely equitable controversy and is governed by equitable principles. 81 C.J.S. Specific Performance §1, p. 408. See also: State ex rel. Victor's Inc. v. District Court, ____Mont.____, 545 P.2d 1098, 33 St.Rep. 23, 27.

In 81 C.J.S. Specific Performance §3, p. 411, it is stated:

> " * * * specific performance will be ordered only on equitable grounds in view of all the conditions surrounding the particular case. * * *
>
> "A bill in equity for specific performance is an appeal to the conscience of the court, and generally, in such a proceeding, the inquiry must be whether, in equity and good conscience, the court should specifically enforce the contract. Accordingly, specific performance will be granted when it is apparent from a view of all the circumstances of the particular case that it will serve the ends of justice, and it will be withheld when, from a like view, it appears that it will produce hardships or injustice to either party * * *." (Emphasis added.)

Section 17-809, R.C.M. 1947, states that specific performance cannot be enforced in favor of a party to a contract if that party "has not fully and fairly performed all conditions precedent on his part to the obligation * * *." In Sidwell v. New Mine Sapphire Syndicate, 130 Mont. 189, 197, 297 P.2d 299,

- 4 -

this Court stated:

> "Section 17-803, supra, was construed in
> McDonald v. Stewart, 127 Mont. 188, 199, 259
> P.2d 799, 805, where the court in affirming
> a judgment for defendant said: 'Before
> McDonald is entitled to specific performance
> by Stewart, he must show that he has performed
> his part of the agreement. This he has failed
> to do. R.C.M. 1947, section 17-803, provides:
> "Neither party to any obligation can be compelled
> specifically to perform it, unless the other
> party thereto has performed * * *".
>
> "'Unless performance is waived or excused, a
> plaintiff seeking to enforce a contract must
> perform his obligations thereunder, and plain-
> tiff's wilful violation of an essential covenant
> of a contract is a defense to specific enforcement
> of the contract. 81 C.J.S., Specific Performance,
> section 94, page 614.'"

Therefore, this Court is required to examine the facts and circumstances of this case to determine whether plaintiff fully and fairly performed his obligations under the contract.

The facts show plaintiff farmed approximately 500 acres as his own, and defendants farmed approximately 2000 acres during the time the contract was in existence. Defendants and plaintiff exchanged work and machinery between the two properties, but no showing was made that plaintiff took possession or control of the ranch in any manner different from the operation before the contract.

According to the contract, defendants were to receive 1/2 of the crop as rent and pay 1/2 of all expenses for fuel, seed, repairs and other incidental farm expenses. In reality, Seifert Sr.'s statements show this was not the case.

> "Q. You took a little more because of the extra
> work. A. Of course all the way through and all
> the time he has had that farm or supposed to have
> been renting and when his lease was up -- we,
> when I say we, the wife and I, have paid for all
> fuel, paid for all the oil, paid for all the grease,
> we have paid for all repairs, and all the farm
> machinery, plus all repairs on the combines, plus
> I am safe in saying 95 percent of the hired help
> we have paid for. When I say 'we', I say the wife
> and I. So when you figure that all out, that runs

into quite a little sum of money.

"Q. That is the reason you have taken more of the crop, then? A. Right.

" * * *

"Q. Did the two of you provide various parts of the work that went in to operate your ground in 1972? A. He didn't help much after I got that big tractor at my place. I done my own work on my own place, and then he was there to get the tractor to go down and do his.

"Q. So, therefore, since you were doing most of the work on your place, you took most of the crop? A. Right.

"Q. He only took a smaller portion of the crop, and he didn't get any 50 percent; is that correct? A. Right."

Seifert Sr.'s statements also show plaintiff did not take over the ranch repair work:

"A. Well, there was times when we were caught up, there was a lot of fence fixing, things he could do. But he didn't. He hasn't set a fence post even on his own place since he bought it. What fence fixing has been done, I have had done or done myself and paid for it.

"Q. I see. And then you have taken a little more of the crop because of that? A. Yeah."

Under the circumstances, plaintiff failed to show he fully and fairly performed the lease according to its terms. For plaintiff to secure the desired relief (specific performance) he is required to come into court with clean hands, and with a cause whose ethical qualities were such as to commend it to the conscience of the court. Schlegel v. Moorhead, ____Mont.____, 553 P.2d 1009, 33 St.Rep. 836, 840; section 49-109, R.C.M. 1947.

This action seeks an equitable remedy. In view of the fact plaintiff did not perform his obligations under the contract, this Court cannot in good conscience grant specific performance to plaintiff. We agree with the district court in not granting plaintiff's motion for summary judgment.

Plaintiff's second issue challenges the granting of

of defendants' motion for summary judgment.

The facts show plaintiff continued the work-trade arrangement from 1970 through 1974 with the knowledge of defendants' contention as to the lease. Defendant, Seifert Sr., stated:

> "Q. Ed, after you sent back the document that was sent to you in 1970, I mean after you had me do it for you by certified mail--and that is a document that is here as a copy--what did Eddy say; anything? And you are looking at Exhibit 2. Did he protest to you when you sent that back? A. Nope.
>
> "Q. Did he continue to work with you the same as before? A. Right.
>
> "Q. Right up to about 1974? A. Yeah. But as I say, he started slacking off the last few years and he has been doing less.
>
> "Q. Well, I understand. But, I mean, did he start asserting any rights until last fall? A. No."

Plaintiff admitted this in his deposition of December 11, 1975:

> "Q. You talked to your folks. And did they repeatedly advise you that they thought you didn't have a lease? A. Yes.
>
> "Q. And from the spring of 1970, did they so advise you everytime it came up? A. Sometime after that we mentioned it.
>
> "Q. Everytime it came up for discussion, they didn't change their position, did they? A. Well, I suppose they didn't.
>
> "Q. And it was known to you that that was their position throughout the period; wasn't it? I mean, from 1970 on? A. Yes; yes."

Thus, from 1970 to 1974, plaintiff did nothing to enforce his claim, knowing defendants contended that he had no lease.

Plaintiff brought this suit in equity. Since plaintiff raised this question in equity, the equitable defense of laches and unreasonable delay is applicable.

In Adair v. Capital Invest Co., 165 Mont. 26, 29, 525 P.2d 548, this Court reviewed the equitable doctrine of laches, quoting from Riley v. Blacker, 51 Mont. 364, 152 P. 758, 759:

"'Laches, considered as a bar independent of
the statute of limitations, is a concept of equity;
it means negligence in the assertion of a right;
it is the practical application of the maxim,
"Equity aids only the vigilant"; and it exists
when there has been unexplained delay of such
duration or character as to render the enforce-
ment of the asserted right inequitable. There-
fore has it often been held by this court that:
While a mere delay short of the period of the
statute of limitations does not of itself raise
the presumption of laches [citing cases], yet
"good faith and reasonable diligence only can call
into activity the powers of a court of equity,
and, independently of the period fixed by the
statute of limitations, stale demands will not
be entertained or relief granted to one who has
slept upon his rights. Considerations of public
policy and the difficulty of doing justice be-
tween the parties are sufficient to warrant a
court of equity in refusing to institute an
investigation where the lapse of time in the
assertion of the claim is such as to show in-
excusable neglect on the part of the plaintiff,
no matter how apparently just his claim may be;
and this is particularly so where the relations
of the parties have been materially altered in
the meantime." * * *'" 165 Mont. 29, 30.

In the instant case, plaintiff waived his claim by doing
nothing to enforce his rights once defendants' contention of no
lease came to his knowledge. Further, plaintiff allowed defen-
dants to change their circumstances. Defendant, Seifert Sr.,
bought larger and more expensive equipment to farm all of the
land, he testified:

"A. Right. It was getting to be more work. And
in 1971, I bought that big four-wheel tractor,
the first one, because with his tractor and the
one I had and him buying the rest of that ranch was
too much.

"Q. That was in 1971 that you bought the big out-
fit? A. Yes, sir.

"Q. Was the reason you bought that, was that so
you could get all the land taken care of? A. Right."

Also, in 1974 the ranch belonging to Seifert, Sr. and
his wife, was incorporated. This incorporation took place with
the knowledge of plaintiff and was aided by suggestions of
plaintiff.

As a result of plaintiff's negligence in asserting his

rights, and the change in defendants' circumstances, the ends of justice are served by granting defendants' motion for summary judgment.

The order of the district court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices