No. 92-381

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

TERRY DANELSON, INC. and TERRY L. DANELSON,

Plaintiffs and Appellants,

v.

ROGER JUEL and NANCY JUEL; DANIELS-SHERIDAN FEDERAL
CREDIT UNION; and DR. MERLE D. FITZ, et al.,

Defendants and Respondents.

-----------------------------------

DANIELS-SHERIDAN FEDERAL CREDIT UNION,

Cross-Claim and Third-Party Plaintiff,

v.

ROGER JUEL and NANCY JUEL, husband and wife,

Cross-Claim Defendants,

and

MERLE D. FITZ and JEAN E. FITZ, husband and wife,

Third-Party Defendants.

-----------------------------------

MERLE D. FITZ and JEAN E. FITZ, husband and wife,

Third-Party Defendants and
Cross-Claim Plaintiffs,

v.

TERRY DANELSON, INC., and TERRY DANELSON,

Plaintiffs and Cross-Claim Defendants.

FILED

MAY 25 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifteenth Judicial District,
               In and for the County of Daniels,
               The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Loren J. O'Toole, O'Toole & O'Toole,
Plentywood, Montana

For Respondents:

Laura Christoffersen, Christoffersen & Knierim,
Wolf Point, Montana (Juels);
Carol Johns, Attorney at Law, Wolf Point,
Montana and Paul W. Jacobson, Attorney at Law,
Williston, North Dakota (Daniels-Sheridan
Federal Credit Union)

Submitted on Briefs: February 4, 1993

Decided: May 25, 1993

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Terry Danelson appeals from an order of the Fifteenth Judicial District Court, Daniels County, granting summary judgment and ordering the parties to specifically perform a contract for deed. The court granted respondents Roger and Nancy Juel possession of the premises and ordered appellant to withdraw his sign-up with the ASCS farm program.

We affirm.

This Court will consider the following two issues for the appeal.

1. Did the District Court err in granting summary judgment for specific performance on the contract for deed to respondents?

2. Did the District Court err in refusing to consider appellants' Rule 56(f), M.R.Civ.P., affidavit?

In 1990, Terry Danelson entered negotiations with Roger and Nancy Juel who were interested in purchasing Danelson's farm located near Scobey. The parties initially entered a lease agreement by which the Juels agreed to farm the land for the 1990 crop season with a one-half share of the crop as a lease payment to Danelson.

After lengthy negotiations, the parties executed a contract for deed for the farm. The relevant provisions of the contract for deed provided that Danelson was to surrender possession of the property to the Juels immediately upon execution of the contract. The contract also contained a 30-day grace period after notice to cure any default payment by the Juels.

On April 16, 1991, the Juels' attorney wrote Danelson's attorney stating that he would deposit the Juels' check for $42,944.75 in a special account when all the parties signed the necessary papers. On April 16, 1991, the Juels executed the contract for deed. The contract purported the inception date to be April 1, 1990. The payment schedule required that the Juels make the first annual payment on January 1, 1991, and the amortization schedule computed interest from January 1, 1991. It appears that upon execution of the contract, those matters that had not yet been performed, and were known by the parties not to have been performed, made it appear that the Juels were in default.

Also on April 16, 1991, Danelson signed up the property for Agricultural Stabilization and Conservation Service (ASCS) farm payments for 1991. He specified that the payments should be divided with one-half going to himself and the other half going to the Juels. In a separate agreement, but referred to as a down payment in the contract for deed, the Juels bought certain farm machinery from Danelson for $75,000. Danelson executed a bill of sale for the machinery but he never delivered it to the Juels.

A few days later the Juels discovered that Danelson had signed up the farm for ASCS payments and that he was entitled to one-half of those payments. Upon this discovery, the Juels refused to place the $42,944.75 into the special account. Danelson refused to modify the ASCS arrangement. Because the Juels did not place the money into the special account, Danelson sent them the 30-day notice of default, but they still refused to make the payment.

4

On July 18, 1991, Danelson filed a complaint against the Juels for breach of contract. On February 4, 1992, the Juels filed a motion for summary judgment. On March 20, 1992, Danelson filed a Rule 56(f), M.R.Civ.P., affidavit contending that ruling on summary judgment would be improper without additional discovery. On April 14, 1992, the District Court granted summary judgment in favor of the Juels. Danelson appeals the decision of the District Court.

I.

Did the District Court err in granting summary judgment for specific performance on the contract for deed to respondents?

We will not overturn a district court's decision granting summary judgment if under the record before the court there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Palin v. Gebert Logging, Inc. (1986), 220 Mont. 405, 716 P.2d 200. The granting of summary judgment is proper if the party opposing the motion fails to prove that a genuine issue of material fact exists or fails to show that a legal issue should not be resolved in favor of the movant. Palin, 716 P.2d at 202.

The District Court granted specific performance of the contract for deed, despite the actions of both parties. Danelson contends the Juels fraudulently induced him into entering the contract for deed by misrepresenting that they were about to deliver a check for $42,944.75 into a special account. Danelson further argues that by failing to deliver the $42,944.75 into the

special account, the Juels were first to breach because they had been in default since January 1, 1991. The Juels counter that Danelson was not entitled to sign up for the ASCS payments and that by doing so he failed to deliver full possession of the property immediately upon execution of the contract, and therefore, he was the first to breach the contract.

We have stated that specific performance is

> an equitable remedy which compels the performance of a contract in the precise terms agreed on. The foundation of a suit for specific performance of a contract is that, by compelling the parties to do the very things they agreed to do, more complete and perfect justice is attained than by giving damages for breach of a contract. Specific performance is purely an equitable remedy; presenting a purely equitable controversy and is governed by equitable principles. 81 C.J.S. Specific Performance § 1, p. 408. See also: *State ex rel. Victor's Inc. v. District Court*, 169 Mont. 110, 545 P.2d 1098.

> In 81 C.J.S. Specific Performance § 3, p. 411, it is stated:

>> "*. . . specific performance will be ordered only on equitable grounds in view of all the conditions surrounding the particular case. . . .*

>> *A bill in equity for specific performance is an appeal to the conscience of the court, and generally, in such a proceeding, the inquiry must be whether, in equity and good conscience, the court should specifically enforce the contract.* Accordingly, specific performance will be granted when it is apparent from a view of all the circumstances of the particular case that it will serve the ends of justice, and it will be withheld when, from a like view, it appears that it will produce hardships or injustice to either party . . . ."

Seifert v. Seifert (1977), 173 Mont. 501, 504, 568 P.2d 155, 156-57.

Section 27-1-416, MCA, states that specific performance will not be enforced in favor of a party to a contract if that party has

6

not "fully and fairly performed all the conditions precedent on his part to the obligation of the other party . . ." except where the party's failure to perform is only partial and capable of being fully compensated. Therefore, this Court is required to examine the facts and circumstances of this case to determine whether the Juels fully and fairly performed their obligations under the contract, and if not, whether their failure is only partial and capable of being fully compensated.

When executing the contract for deed, Danelson retained legal title to the property and is only entitled to receive payments and possibly receive the property back if the Juels defaulted. Danelson can only retain an interest in the use of the property if he specifically reserves that use by the terms of the contract for deed. In the contract for deed, Danelson only reserved mineral rights. The contract for deed does not mention reserving any right to share in the ASCS payments. After the execution of the contract, Danelson did not have any right or interest in receiving ASCS payments.

The Juels did partially perform the contract for deed by providing a $75,000 down payment as stated in the contract for deed and by executing the contract. The Juels defaulted on the contract when they did not tender the $42,944.75. The contract for deed provided that the Juels had a 30-day grace period after notice in which to cure any default. The Juels received their notice and failed to cure the default. It was only then that the Juels breached the contract.

7

The District Court concluded that both parties had spent a considerable amount time and effort to enter into the contract and took considerable steps in trying to place the contract into effect. Both parties partially performed the contract for deed and their breach is capable of being fully compensated. We agree with the court that in the interest of justice and equity the appropriate remedy is specific performance. In this instance, that would be to place the parties in the same position as they would have been had neither party breached and reinstate the contract for deed. We hold that the District Court did not err in granting summary judgment for specific performance in favor of the Juels. Because of our holding we need not address issue two.

We affirm.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____
Chief Justice

8

John Conway Harrison

Troy Trieweiler

R. C. McDonough

Justices