No. DA 06-0017

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 295N

IN THE MATTER OF THE ESTATE
OF EUGENE L. BODNER,

      Deceased.

APPEAL FROM:    The District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DP 03-054,
Honorable David Rice, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Bruce E. Swenson, Barron & Swenson, P.C., Havre, Montana

      For Respondent:

          Randy H. Randolph, Attorney at Law, Havre, Montana

                Submitted on Briefs:   October 25, 2006

                Decided:  November 14, 2006

Filed:

_____
                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result in this Court's quarterly list of nonciteable cases published in the Pacific Reporter and Montana Reports.

¶2 Raymond Staples, claimant and respondent, filed a creditor's claim against the estate of Eugene L. Bodner, seeking to enforce the option to buy located in the lease between Staples and the estate. The claim was disallowed by the estate. Following a hearing on the claim, the District Court upheld the claim and ordered specific performance of the option to buy, plus costs. We affirm.

¶3 Eugene L. Bodner (Eugene) owned property located near Havre, in Hill County, Montana, described as follows: Township 32 North, Range 13 East, M.P.M. Section 13: N ½ SE ¼, SE ¼ SE ¼. A conservatorship was established for Eugene, and Earl Bodner (Earl) and Debbie Bott (now Debbie Bodner) (Debbie) were named as co-conservators and acted in that capacity until the end of the lease in question.

¶4 In 1998 a five-year lease was entered into between the co-conservators as lessor and Staples as lessee. The lease required, as rent, that Staples pay one-quarter of the share of all crops and any other income generated from the property to the conservatorship. The lease also required Staples to farm the property in good faith, while recognizing that the property has a "very serious noxious weed problem." Further, the

lease required Staples to pay all of the expenses incurred in the operation of the farm, including, but not limited to, fencing and harvesting expense. Concerning lessor remedies, the lease specified that, should Staples default on any of his obligations under the lease, including payment of rent, the conservatorship must send "written notice and demand for performance." If Staples then failed to remedy the default within thirty days, the lease would terminate, at the option of the conservatorship. Finally, the lease contained an option to purchase the property for $40,000 at the end of the lease term, on the condition that Staples give the conservatorship written notice that he desired to execute the option at least thirty days before the end of the lease.

¶5 Staples assumed control of the property under the lease on November 1, 1998, and began rehabilitating the property. In 1999 Staples inquired as to whether the estate would pay for the cost of fence building material if he provided the labor to build the fence. Earl agreed to Staples's proposal. Earl and Debbie had agreed that Earl would handle the payment of bills for the estate. Staples made other improvements and farmed the property, though his farming was hampered by the necessity of regularly spraying to control weeds. Staples also allowed a third party to pasture about 200 head of cattle on the property in exchange, apparently, for the right to pasture Staples's cattle on the third party's property.

¶6 On September 21, 2003, towards the end of the lease, but before the thirty-day limit, Staples sent Earl and the estate's attorney notice that he was exercising his option to buy the property for $40,000. Though Staples had the funds available, no purchase

3

occurred because the estate refused to sell. Staples then submitted his creditor's claim against the estate which defended its refusal to sell by claiming Staples had breached the lease and was therefore barred from exercising the option to purchase. The District Court disagreed and found that Staples had not breached the lease and had appropriately relied on Earl's authority to speak for the conservatorship and therefore ordered specific performance of the option.

¶7 **Did the District Court abuse its discretion by granting specific performance of the option to purchase?**

¶8 Specific performance is an equitable remedy and is a matter of discretion for the district court. *Larson v. Undem*, 246 Mont. 336, 342, 805 P.2d 1318, 1323 (1990) (citing *Seifert v. Seifert*, 173 Mont. 501, 568 P.2d 155 (1977)). Willful violation of an essential covenant of a contract is a defense to specific performance unless the violation is waived or excused. *Seifert*, 173 Mont. at 505, 568 P.2d at 157.

¶9 The estate contends that the District Court erred in granting specific performance of the option to purchase because the co-conservators did not unanimously consent to the actions which are alleged to have violated the lease. For an exercise of power to be valid in a co-conservator situation, the estate asserts, unanimous consent of the co-conservators is required under § 72-33-611(1), MCA. Here, the estate argues, Staples took actions which violated the lease, including being reimbursed for fencing costs, "trading pastures" without paying one-fourth of the benefit gained to the estate, and placing a mobile home on the property. These actions were unauthorized, according to the estate, because only

4

Earl, not Debbie, concurred and Debbie "expressed her displeasure" with the actions. Consequently, from the estate's perspective, Staples is barred from exercising the option to purchase.

¶10 We disagree and conclude that Staples was entitled to rely on Earl's ostensible authority to act for the conservatorship and that Staples's violations, if any, did not terminate the lease because he was never given written notice of his violations as required by the lease. Any violation on the part of Staples, therefore, was "waived or excused."

¶11 A person who in good faith deals with a conservator for value is protected as if the conservator properly exercised the power. Section 72-5-435, MCA. This protection is based on the conservator's ostensible authority, which is the authority that a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess. Section 28-10-403, MCA. All liabilities which accrue within the scope of ostensible authority are binding on the principal. Section 28-10-601, MCA. Ostensible authority can be implied from the words and conduct of the parties and the circumstances of the particular case notwithstanding a denial by the alleged principal. *Youderian Const., Inc. v. Hall*, 285 Mont. 1, 7, 945 P.2d 909, 913 (1997) (citations omitted).

¶12 Here, Staples is protected under § 72-5-435, MCA, because he relied, in good faith, on Earl's authority to act for the conservatorship. Earl signed the lease, consented to the variations from the lease agreement and consented to and wrote checks for any improvements, such as fence materials, which the estate paid for. Importantly, Debbie

5

also signed the lease and never objected to Earl's actions on behalf of the conservatorship. Debbie's silence allowed Staples to believe that Earl acted on behalf of the conservatorship. Debbie claims she "expressed her displeasure," but the only evidence she provided the District Court was her testimony that she sent a letter to the estate's attorney sometime "in 2000." However, she was unable to produce a copy of the letter.

¶13 Additionally, the terms of a contract, such as a lease, control if they are clear and explicit. Section 28-3-401, MCA. In the present case, the terms of the lease clearly require that the conservatorship give Staples written notice of a violation, and thirty days to correct the noticed violation, before the conservatorship has the option to terminate the lease. Specifically, the lease provides that it shall "cease and terminate" only if "written notice and demand for performance" is given to Staples, which did not occur here. Earl expressly consented to Staples's use of the property and Debbie failed to take sufficient action to warn Staples of any violations and demand corrective performance. Therefore, even assuming Staples violated his obligations under the lease, the lease did not terminate and Staples is entitled to exercise the option to purchase.

¶14 For the foregoing reasons we conclude that the District Court did not abuse its discretion in granting specific performance and therefore affirm the judgment of the District Court.

/S/ W. WILLIAM LEAPHART

We concur:


/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON